COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN ZURN
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: September 8, 2017
Date Decided: September 22, 2017

Carl D. Neff
E. Chaney Hall
Wali W. Rushdan II
Fox Rothschild LLP
919 North Market Street, Suite 300
Wilmington, DE 19801

William D. Sullivan
Elihu E. Allinson III
Sullivan Hazeltine Allison LLC
901 North Market Street, Suite 1300
Wilmington, DE 19801

RE: *Apogee Investments, Inc. v. Summit Equities LLC*
Civil Action No. 12897-MZ

Dear Counsel:

In this books and records action, plaintiff Apogee Investments, Inc.

("Apogee") seeks leave to amend its Amended Verified Complaint in order to seek

the production of additional documents from defendant Summit Equities, LLC

("Summit"). Summit opposes Apogee's motion to amend, arguing that leave to

amend should be denied as futile, unduly prejudicial, and unduly delayed. In this

final report, I recommend the Court grant Apogee's motion for leave to amend.

## I. BACKGROUND[1]

Summit was formed on or about May 5, 2010. Pursuant to Summit's

operating agreement, Summit was authorized to loan $1,450,000 to Evan Seiden,

---

[1] Unless noted otherwise, the facts recited in this opinion are based on the allegations of Apogee's proposed Second Amended Verified Complaint (the "Proposed Third Complaint").

Summit's managing member.  On February 16, 2011, Apogee invested $2,700,000 in Summit and received twenty-five common units.  Seiden owns Summit's remaining seventy-five common units and all Class A units.  On October 14, 2016, Seiden advised Apogee that Summit had no assets and would be dissolved.  Apogee requested access to Summit documents and information, but neither Summit nor Seiden replied to Apogee's satisfaction.

On November 2, 2016, Apogee sent a demand letter to Summit requesting documents, then filed a Verified Complaint on November 14, 2016.  The Verified Complaint alleged several proper purposes for the request, including to "evaluate any implications that Seiden's related party loan and recorded legal expenses may have in the governance of the Company."[2]  Summit produced some, but not all, of the documents Apogee sought.  Apogee sent a second demand letter to Summit on December 8, 2016 (the "Second Demand Letter").  The Second Demand Letter sought documents for four purposes, including "(c) to evaluate any implications that Seiden's related party loans and recorded legal expenses may have in the governance of the Company; and (d) to investigate mismanagement and wrongdoing by the Managing Member of the Company."[3]  On December 19, 2016, Apogee filed its Amended Verified Complaint ("Second Complaint"),

---

[2] Proposed Third Compl. ¶ 11.

incorporating its Second Demand Letter.  Summit answered the Second Complaint and continued to produce documents.

Apogee sent another demand letter to Summit on June 30, 2017 (the "Third Demand Letter").  On July 18, 2017, Summit responded that it would produce documents, but did not do so by July 31, 2017, when Apogee moved for leave to amend to incorporate the Third Demand Letter's requests into a Second Amended Complaint ("Proposed Third Complaint").  The Proposed Third Complaint seeks financial reports, including updated reports for specific real estate assets, and documents regarding any indebtedness by Seiden and the sale or encumbrance of any Summit asset.[4]  Like the Second Complaint, the Proposed Third Complaint seeks documents for four purposes, including "(c) to evaluate any implications that Seiden's related party loans and recorded legal expenses may have in the governance of the Company; and (d) to investigate mismanagement and wrongdoing by the Managing Member of the Company."[5]

The parties briefed Apogee's motion, and I held oral argument instead of the previously scheduled trial on September 8, 2017.  Trial is currently scheduled for October 18, 2017.  This is my final report.

---

[3] *Id.* ¶ 16.
[4] *Id.* ¶ 20.
[5] *Id.* ¶ 21.

## II.  ANALYSIS

The procedural posture of Apogee's motion to amend, which seeks to add categories of documents that are allegedly essential to investigating corporate mismanagement, requires that I give Apogee broad latitude.  Court of Chancery Rule 15(a) dictates that leave to amend should be freely given when justice requires; a defendant alleging the proper purpose of mismanagement faces the lowest possible burden; and in evaluating those allegations, I am required to take well-plead facts as true and draw all reasonable inferences in Apogee's favor.  Summit's objections to Apogee's proposed amendments fail under these compounded liberal standards.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."[6]  Rule 15(a) "reflects the modern philosophy that cases 'are to be tried on their merits, not on the pleadings.'"[7]  But "[l]eave to amend should not be granted where there is evidence of bad faith, undue delay, dilatory motive, undue prejudice or futility of amendment."[8]  Nevertheless, "courts generally will not test the sufficiency of the pleadings in a ruling on a motion to

---

[6] Ct. Ch. R. 15(a).
[7] *NACCO Indus., Inc. v. Applica, Inc.*, 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008) (quoting *In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *2 (Del. Ch. Feb. 28, 2006)).
[8] *N.S.N. Int'l Indus., N.V. v. E.I. DuPont De Nemours & Co.*, 1994 WL 148271, at *8 (Del. Ch. Mar. 31, 1994).

amend. A motion to amend may be denied, however, if the amendment would be futile, in the sense that the legal insufficiency of the amendment is obvious on its face."[9] In evaluating futility, I am required to take well-plead facts as true and draw all reasonable inferences in Apogee's favor.[10] Leave to amend should not be granted "where it appears with reasonable certainty that the plaintiff would not be entitled to the relief sought under any reasonable set of facts properly supported by the complaint."[11]

Summit opposes Apogee's Proposed Third Complaint as futile. Summit claims the amendments fail to plead mismanagement and seek documents that are nonessential. At trial, Apogee must show that it is entitled to inspect books and records by establishing it has a proper purpose and that the requested documents are "essential and sufficient" to that stated purpose.[12] Under Delaware law, investigating mismanagement is a proper purpose,[13] but the party seeking books and records must show "some credible basis from which the Court can infer that

---

[9] *NACCO Indus.*, 2008 WL 2082145 at *1.

[10] *FS Parallel Fund LP v. Ergen*, 2004 WL 3048751, at *2 (Del. Ch. Nov. 3, 2004).

[11] *Id.*

[12] *Somerville S. Trust v. USV Partners, LLC,* 2002 WL 1832830, at *8 (Del. Ch. Aug. 2, 2002). Section 18-305 governs books and records demand unless an LLC agreement limits or otherwise modifies inspection rights. *Sanders v. Ohmite Holdings*, LLC, 17 A.3d 1186, 1192 (Del. Ch. 2011) Summit has not argued its LLC agreement limits inspection rights (other than the exculpation clause, discussed *infra*). *See* Op. Ag. § 9.1 (noting right to inspect books and records upon "reasonable advance notice to the Company … for any proper and lawful purpose at any reasonable time during business hours").

waste or mismanagement may have occurred."[14]  "[T]he 'credible basis' standard sets the lowest possible burden of proof" that could only be lowered by eliminating "any requirement that a stockholder show *some evidence* of possible wrongdoing."[15]

Apogee's pleadings of mismanagement are lacking in detail, but on a motion to amend, I find they are sufficient.  The Proposed Third Complaint alleges that Apogee and Seiden were Summit's only members, that Summit was authorized to extend Seiden a loan, that Seiden advised Apogee with little notice or explanation that Summit had no assets and would be dissolved, and that Apogee filed numerous letters and demands to get documents related to Seiden's loan and Summit's holdings and has still not received them.[16]  Summit contends these allegations are speculative, fail to plead mismanagement, and are pretext for a fishing expedition.

In finding the pleadings sufficient to justify amendment, I take instruction from *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, in which this Court evaluated sparse pleadings stating a purpose of investigating

---

[13] *Sec. First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d 563, 567-69 (Del. 1997).
[14] *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 681 A.2d 1026, 1031 (Del. 1996).
[15] *Seinfeld v. Verizon Commc'ns, Inc.,* 909 A.2d 117, 123 (Del. 2006).
[16] Proposed Third Compl. ¶¶ 4, 6-9, 20, Ex. A § 9.3.

mismanagement on a motion to dismiss.[17]  The Court considered allegations of "a sudden, material change" in the defendant's available oversubscription rights, coupled with contradictory information contemporaneously provided to the plaintiff,[18] and "reject[ed] [defendant's] argument that [plaintiff] had an obligation to identify specific actions of specific officials of the Company to meet i[t]s pleading burden" for its books and records request.[19]  The Court concluded that because books and records proceedings are summary, the defendant's contention was best addressed after development of the factual record at trial.[20]

As in *Deephaven*, Apogee alleged a sudden, material change in the company's landscape, and obfuscation by the defendant.  Apogee also alleged that change was drastic and catastrophic, and coupled it with the potential for the managing member to be personally indebted to the defendant.  Apogee was not obligated to identify specific actions by Seiden to meet its pleading burden.  I must consider Apogee's allegations as true and give them the benefit of all reasonable inferences, and I must give leave to amend freely.  I cannot conclude that Apogee's allegations are so obviously deficient on their face as to be deemed futile.  Whether

---

[17] 2004 WL 1945546 (Del. Ch. Aug. 30, 2004).
[18] *Id.* at *7.
[19] *Id.* at *8.
[20] *Id.*

Apogee can prove a credible basis of mismanagement without the benefit of the inferences on a motion to amend may be resolved at trial.[21]

Summit also opposes Apogee's proposed amendments in pursuit of investigating mismanagement on the basis that Summit's operating agreement exculpates Seiden from wrongdoing short of "gross negligence, fraud, bad faith or willful misconduct."[22] Ultimately, at trial Apogee will need to prove its low burden of showing a credible basis to infer mismanagement, and the parties may spar over whether Seiden committed actions falling in the more severe non-exculpated categories, and whether any exculpation defeats Apogee's purpose of investigating mismanagement by rendering any intended litigation nonjusticiable.[23] But under the motion to amend standard, the exculpation clause does not render Apogee's proposed pleadings of mismanagement futile.

Summit's litigation positions to date also inform what justice requires under Rule 15(a). Apogee's first Complaint sought documents to "evaluate any implications that Seiden's related party loan and recorded legal expenses may have in the governance of the Company." Apogee's Second Complaint introduced the

---

[21] *Id.*; *Shamrock Activist Value Fund, LP v. iPass, Inc.*, 2006 WL 3824882, at *2 (Del. Ch. Dec. 15, 2006).

[22] Op. Ag. ¶ 3.3.

[23] *See Se. Pennsylvania Transp. Auth. v. Abbvie Inc.*, 2015 WL 1753033, at *13 (Del. Ch. Apr. 15, 2015).

additional purpose of investigating mismanagement. The Second Complaint and Proposed Third Complaint contain the same allegations of the party loan and mismanagement; the Proposed Third Complaint further alleges that Summit's production did not address all categories of documents sought and that Apogee had investigated the documents produced and Summit's representations that certain documents did not exist.[24] Summit answered the Second Complaint, and did not move to dismiss. Rule 15 recommends amendment where justice requires; in my view, justice requires permitting Apogee to proceed on essentially the same mismanagement allegations that have been at issue since the December 2016 Second Complaint. Summit has known of and engaged on those allegations.

The Proposed Third Complaint introduces new categories of requested documents. Summit claims that the documents Summit already produced satisfy Apogee's proposed amended categories of requested books and records, such that those categories cannot be essential and sufficient, and the amendment is futile. The record that I may reference in determining the futility of a motion to amend is limited to the pleadings; the amendment's legal insufficiency must be "obvious on its face."[25] Summit asks me to compare documents it has already produced to the

---

[24] Mot. to Amend Ex. A1 (providing a redline of the Proposed Third Complaint against the Second Complaint).
[25] *NAACO Indus.*, 2008 WL 2082145 at *1.

documents Apogee requests in its Proposed Third Complaint. For example, Summit asks me to review a general ledger for one of Summit's assets and conclude that general ledger renders Apogee's requested updated reports regarding that asset non-essential. Summit's argument would require me to consider matters outside the pleadings, resolve factual issues, and make inferences in Summit's favor, none of which I can do at this stage. Once again, given the procedural posture on a motion to amend, I am unable to conclude that the requested books and records are so far from essential and sufficient as to be futile.

Summit objected to two of Apogee's requests specifically, arguing that Summit could not be made to create or update reports that it does not have, and that it need not produce documents regarding its subsidiaries.[26] These fact-specific arguments are premature. Whether certain categories of documents exist is a factual inquiry that goes beyond the pleadings. Whether Summit must produce documents pertaining to its subsidiaries is based on the extent to which Summit controls its subsidiaries and their value accrues to Summit.[27] These fact-specific determinations must be left for trial and do not justify denying leave to amend.

---

[26] Def.'s Obj. to Mot. For Leave to File Second Amended Complaint ¶34.
[27] *DFG Wine Company, LLC v. Eight Estates Wine Holdings, LLC*, 2011 WL 4056371, at *5 (Del. Ch. Aug. 31, 2011).

Turning to Rule 15(a)'s other circumstances for denying leave to amend, I also conclude that Apogee's proposed amendments will not unduly prejudice Summit, and that Apogee's motion was not unduly delayed. "Amendments to the pleadings are liberally allowed unless serious prejudice to the opposing party will result."[28] The nonmoving party must show "undue or demonstrable prejudice or a bad faith motive by the moving party."[29] Inconvenience and delay alone are not sufficient.[30] Summit argues that the amendment is prejudicial because it reflects a "creeping expansion" of claims on the eve of trial, based on *Beatrice Corwin Living Irrevocable Trust v. Pfizer*[31] and *Fuchs Family Trust v. Parker Drilling Co.*[32] These cases differ substantially from the present circumstances. The demand submitted in *Beatrice Corwin* "was not clearly made until after trial" and sought to add participants in the alleged mismanagement and a new theory.[33] In *Fuchs Family*, after both parties had filed opening pre-trial briefs, and eight days before trial, the plaintiff sent an updated broader demand.[34] In contrast, trial in this case is weeks away and pretrial briefing has not yet taken place, and Summit has

---

[28] *Kirby v. Kirby*, 1989 WL 111213, at *4 (Del. Ch. Sept. 26, 1989).
[29] *Gotham Partners v. Hallwood Realty*, 1999 WL 1022069, at *1 (Del. Ch. Oct. 18, 1999).
[30] *Kirby*, 1989 WL 111213 at *4 (noting that although "the defendants may be inconvenienced by the amendment, they have not shown that they will suffer serious prejudice").
[31] 2016 WL 4548101, at *7 (Del. Ch. Aug. 31, 2016).
[32] 2015 WL 1036106, at *3-4 (Del. Ch. Mar. 4, 2015).
[33] 2016 WL 4548101 at *6-8.
[34] 2015 WL 1036106 at *3-4.

been aware of the mismanagement and party loan purposes since at least December 2016.[35]  The parties have been negotiating and conducting document production under that theory.  There is no risk that Summit would be "impaired by forcing it to adapt its response and defense to" Apogee's requests.[36]

There is no evidence that Apogee unduly delayed or acted in bad faith. While Apogee had some of the information upon which the Proposed Third Complaint relies, Summit recently produced documents that have been illuminative to Apogee, and the alleged need for additional documents arose over time.[37]  The parties twice agreed to extend the trial date, indicating a lack of urgency.  Summit cursorily alleges bad faith,[38] but I see no evidence of it. "Nothing suggests the plaintiff[] wrongfully omitted facts from [its] [proposed] amended complaint that were obviously important to [its] claims, or attempted to either delay the litigation or force the defendant[] to incur additional costs."[39]

I conclude that the interests of justice would best be served by allowing Apogee to amend its complaint.

---

[35] Proposed Third Compl. ¶¶ 16-17.
[36] *See Fuchs Family Trust*, 2015 WL 1036106 at *4.
[37] *See* Proposed Third Compl. ¶¶ 18-19, Ex. D.
[38] Def.'s Obj. to Mot. For Leave to File Second Amended Complaint ¶ 34.
[39] *NACCO Indus.*, 2008 WL 2082145, at *2.

## III.   CONCLUSION

For the reasons stated herein, I recommend the Court grant Apogee's motion

to amend.  This is a final report pursuant to Court of Chancery Rule 144.

Respectfully,

*/s/ Morgan T. Zurn*

Master in Chancery