**THOMAS & BETTS CORPORATION,**
Plaintiff Below, Appellant,

v.

**LEVITON MANUFACTURING CO., INC.,**
Defendant Below, Appellee.

No. 70, 1996.

Supreme Court of Delaware.

Submitted: June 11, 1996.
Decided: Aug. 2, 1996.

---

Thomas Reed Hunt, Jr. and David J. Teklits of Morris, Nichols, Arsht & Tunnell, Wilmington, and Scott A. Edelman (argued), of Milbank, Tweed, Hadley & McCloy, New York City, for Appellant.

David C. McBride and Bruce L. Silverstein of Young, Conaway, Stargatt & Taylor, Wilmington, and Kenneth B. Forrest (argued), and Ben M. Germana of Wachtell, Lipton, Rosen & Katz, New York City, for Appellee.

Before VEASEY, C.J., WALSH and BERGER, JJ.

**VEASEY, Chief Justice:**

In this appeal we affirm the order of the Court of Chancery denying in part and limiting a stockholder's entitlement to inspection of books and records. In doing so, we rest our decision on the fact that the trial court's determination of the stockholder's failure to show a proper purpose turned on legal and credibility assessments well within the proper burden placed on a stockholder seeking an inspection. Such a stockholder has the burden of showing, by a preponderance of the evidence, a proper purpose entitling the stockholder to an inspection of every item sought. Here, the Court of Chancery overstated the burden on the stockholder as a "greater-than-normal evidentiary burden." The burden on the stockholder is a normal burden and this stockholder failed to adduce sufficient evidence to meet that burden.

## I. Facts

Plaintiff below-appellant, Thomas & Betts Corporation ("Thomas & Betts" or "plaintiff"), appeals from a decision of the Court of Chancery granting in part and denying in part its request for inspection of certain books and records of defendant below-appellee, Leviton Manufacturing Co., Inc. ("Leviton" or "defendant"). *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, Del.Ch., C.A. No. 14069, 1995 WL 761208 (Dec. 19, 1995).

Leviton is a closely held Delaware corporation engaged in the business of manufacturing electronic components and residential wiring devices. Thomas & Betts is a publicly traded New Jersey corporation engaged in the electronics business. Thomas & Betts and Leviton are not considered to be in competition with one another. This is due, in large part, to Leviton's focus on the residential market. For a number of years, Thomas & Betts has expressed an interest either in acquiring Leviton or engaging in some form of joint venture. During the summer of 1993, Thomas & Betts and Leviton engaged in preliminary negotiations concerning a possible union of the two companies, but no agreement was ever reached. To date, Leviton has not expressed any interest in participating in a change-of-control or joint venture transaction with Thomas & Betts.

Leviton's President and CEO, Harold Leviton, is also the company's majority stockholder. Harold Leviton and his wife control a voting trust which represents 76.45 percent of Leviton's Class A voting stock. He and the other Leviton insiders are members of the Leviton family and most bear some relationship to the company's founder. By all accounts, Harold Leviton is the dominant figure in the corporation, deciding the company's strategy, operations and future goals.

Thomas & Betts decided to seek a minority position in Leviton in order to force a sale of the company to Thomas & Betts. In April of 1994, without the knowledge of Harold Leviton, Thomas & Betts began negotiations with Leviton's former Group Vice President, Thomas Blumberg ("Blumberg"). Blumberg

and his wife, who is Harold Leviton's niece, owned approximately 29.1 percent of Leviton's outstanding shares. Negotiations for the sale of the Blumberg stock to Thomas & Betts were clandestine. In furtherance of the transaction, Blumberg provided Thomas & Betts with confidential internal Leviton documents and disclosed various facets of Leviton's internal strategies and accounting figures. Ultimately, Thomas & Betts paid Blumberg $50 million for his Leviton stake, with a promise of up to an additional $20 million if Thomas & Betts were to accomplish its desired acquisition of Leviton. Thomas & Betts indemnified Blumberg against, *inter alia*, litigation by Leviton, and also agreed to pay up to $7.5 million to Blumberg, in equal quarterly installments, if the sale of his shares were enjoined. At the time of sale, Thomas & Betts was fully aware that Leviton did not pay dividends and that Leviton's accounting practices did not follow Generally Accepted Accounting Principles ("GAAP").

The sale of the Blumberg shares was consummated on July 12, 1994, and Harold Leviton was informed of the sale the following day. Harold Leviton immediately fired Blumberg, only to hire him back and fire him again days later, along with his children and their secretaries. Harold Leviton rebuffed overtures from Thomas & Betts to establish an amicable relationship. Instead, Harold Leviton sought to buy out the interest of Thomas & Betts. From July 1994 to February of 1995, various representatives of Thomas & Betts met with Leviton insiders in an attempt to cultivate a working relationship. On October 6, 1994, Kevin Dunnigan ("Dunnigan"), the CEO of Thomas & Betts, reported to the board of Thomas & Betts on his strategy:

> On the Leviton front, we are moving to the next phase. I will write to Harold Leviton next week to give him a rationale on why it is in everyone's best interests to start a dialogue. We will follow this up with a legal request to review all the books and records of Leviton which will start either a dialogue or a lawsuit.

Harold Leviton, however, remained obstinate in his opposition to Thomas & Betts' ownership position. Although some concessions were made and Thomas & Betts was allowed limited access to Leviton's books and records, by February 1995 it was abundantly clear that Harold Leviton intended to thwart any acquisition of Leviton by Thomas & Betts.

On February 8, 1995, Thomas & Betts served Leviton with a formal demand seeking inspection of the following documents:

1. Leviton's stockholder list,

2. Minutes of Leviton shareholder and directors meetings as well as written consents,

3. Audited financial statements for Leviton and its subsidiaries,

4. Internal financial statements for the current fiscal year provided on a monthly basis,

5. Tax returns filed for Leviton and its subsidiaries,

6. Organizational charts for Leviton and its subsidiaries,

7. Documents relating to interested party transactions between Leviton or its subsidiaries and its shareholders, directors or officers,

8. Documents relating to "key man" life insurance policies taken out by Leviton,

9. Material contracts between Leviton and its subsidiaries,

10. Documents relating to Leviton leases for real estate or equipment.

On February 16, 1995, Dunnigan wrote to Harold Leviton and offered to purchase the balance of Leviton's stock for $250 million, net of expenses. Dunnigan's letter threatened litigation if this final offer were rebuffed:

> You are forcing us down a road where given a choice, I am sure neither of us wants to go. Often, once this process gets started, it ends up with consequences that were never intended. Watch!—It won't be long before the lawyers, the government and the courts are completely in charge, and in the end neither you nor I will have much say in the outcome. There will be only victims, but it won't be the lawyers.

On February 17, 1995, Leviton formally refused both Thomas & Betts' acquisition offer and its inspection demand.

On February 27, 1995, Thomas & Betts filed this action in the Court of Chancery seeking to compel inspection of Leviton's books and records pursuant to 8 *Del.C.* § 220. After a four-day trial, the Court of Chancery determined that: (1) plaintiff's demand was not motivated by its stated purposes of investigating waste and mismanagement, facilitation of the equity method of accounting for its Leviton shares and valuation of those shares; (2) plaintiff's actual motivation was to gain leverage in its efforts to acquire Leviton; (3) this motive was antithetical to the interests of Leviton; (4) despite the initially improper purpose of its demand, Thomas & Betts was entitled to limited inspection so it could value its Leviton shares since a fundamental change of circumstances had occurred; and (5) this inspection should be narrowly circumscribed. From this decision, Thomas & Betts appeals. Leviton has not cross-appealed.

## II. Proper Purpose

Thomas & Betts' Demand Letter purported to state three separate purposes for its requested inspection of Leviton's books and records. Specifically, plaintiff asserted that the books and records were necessary: (1) to investigate possible waste and mismanagement; (2) to facilitate its use of the equity method of accounting for its Leviton investment; and (3) to assist in the valuation of Thomas & Betts' Leviton shares. After trial, the Court of Chancery concluded that plaintiff's articulated purposes were not its actual purposes and that plaintiff's actual purpose

was improper.[1] Specifically, the trial court held that Thomas & Betts was attempting to use the Section 220 proceeding as leverage in its efforts to acquire Leviton. The trial court concluded, however, that Thomas & Betts should be allowed to inspect those books and records necessary to value its investment in Leviton in view of the fact that there had been a change in circumstances.

Thomas & Betts now asserts that the two purposes for inspection not credited by the trial court—investigation of waste and mismanagement and facilitation of the equity method of accounting—constituted proper purposes under Section 220 and that the trial court erred in refusing inspection of books and records relevant to these purposes. These contentions are addressed *seriatim* below.

"The question of a 'proper purpose' under Section 220(b) of our General Corporation Law is an issue of law and equity which this Court reviews *de novo.*" *Compaq Computer Corp. v. Horton,* Del.Supr., 631 A.2d 1, 3 (1993) (citing *Oberly v. Kirby,* Del.Supr., 592 A.2d 445, 462 (1991)); *Western Air Lines, Inc. v. Kerkorian,* Del.Supr., 254 A.2d 240 (1969) (court reviewed proper purpose determination in stocklist case *de novo* ). "The determination of whether [plaintiff's] . . . stated purpose for the inspection was its primary purpose, is a question of fact warranting deference to the trial court's credibility assessments." *State ex rel. Scattered Corp.,* Del.Supr., No. 444, 1995, Veasey, C.J., 1996 WL 191023 (April 4, 1996) (ORDER); *accord CM & M Group v. Carroll, Inc.,* Del.Supr., 453 A.2d 788, 793 (1982).

1. *See, e.g., BBC Acquisition Corp. v. Durr–Fillauer Medical, Inc.,* Del.Ch., 623 A.2d 85, 88 (1992): [W]hen seeking inspection of books and records other than the corporate stock ledger or stock list, a shareholder has the burden of proving that his purpose is proper. *Since such a shareholder will often have more than one purpose, that requirement has been construed to mean that the shareholder's primary purpose must be proper; any secondary purpose, whether proper or not, is irrelevant. CM & M Group, Inc. v. Carroll,* Del.Supr., 453 A.2d 788, 792 (1982); *Helmsman Management Services, Inc. v. A & S Consultants, Inc.,* Del.Ch., 525 A.2d 160, 164 (1987).

(emphasis supplied). *See also Ostrow v. Bonney Forge Corp.,* Del.Ch., C.A. No. 13270, Allen, C., mem. op., 1994 WL 114807 (April 6, 1994) ("Once a shareholder has established a proper purpose for the demanded inspection, any secondary purpose he or she may have is generally considered to be irrelevant. . . . *The primary purpose may not, however, be adverse to the corporation's best interests.*" (emphasis supplied) (citing *CM & M Group, Inc. v. Carroll,* Del.Supr., 453 A.2d 788, 792 (1982); *Skoglund v. Ormand Indus., Inc.,* Del.Ch., 372 A.2d 204, 207 (1976)).

### III. Plaintiff's Claims of Waste and Mismanagement

As found by the Court of Chancery, plaintiff's claims of waste and mismanagement are grounded on Leviton's purportedly substandard financial performance, the company's failure to pay dividends, Leviton's poor cash flow and the company's higher than average expenses. As specific instances of misconduct, plaintiff asserted that: "(a) Leviton has paid for the Leviton family's personal expenses, including use of the company's accounting firm for tax and estate planning purposes; (b) Leviton has been overcompensating its officers and directors at the shareholders' expense; and (c) Leviton's lease agreements with members of the Leviton family are self-dealing transactions." *Thomas & Betts, supra,* slip op. at 15. The trial court found, however, that these claims "are so lacking in record support" that inspection could not be justified.

Plaintiff contends that the Court of Chancery applied an incorrect legal standard in determining that plaintiff's stated purpose lacked adequate record support. Specifically, Thomas & Betts points to portions of the trial court's holding which appear to impose on plaintiff "a greater-than-normal evidentiary burden," to "adduce evidence from which a credible possibility of mismanagement and waste may be inferred" and to "adduce specific evidence of waste and mismanagement." *Id.*

▮▮▮ The Court of Chancery incorrectly articulated the governing legal standard. It is well established that investigation of waste and mismanagement is a proper purpose for a Section 220 books and records inspection. *Nodana Petroleum Corp. v. State,* Del.Supr., 123 A.2d 243, 246 (1956). When a stockholder seeks inspection of books and records, the burden of proof is on the stockholder to demonstrate that his purpose is proper. *CM & M Group,* 453 A.2d at 792.[2] In order to meet that burden of proof, a stockholder must present some credible basis from which the court can infer that waste or mismanagement may have occurred. *Skouras v. Admiralty Enters., Inc.,* Del.Ch., 386 A.2d 674, 678 (1978) ("more than a general statement is required in order for the Court to determine the propriety of a demand"); *Helmsman Management Servs., Inc. v. A & S Consultants, Inc.,* Del.Ch., 525 A.2d 160, 166.(1987) ("A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief. There must be some evidence of possible mismanagement as would warrant further investigation of the matter."); *Neely v. Oklahoma Publishing Co.,* Del.Ch., C.A. No. 5293, Brown, V.C. (Aug. 15, 1977); *Everett v. Hollywood Park, Inc.,* Del.Ch., C.A. No. 14556, Jacobs, V.C., mem. op., 1996 WL 32171 (Jan. 19, 1996) ("Where, as here, the plaintiff's purpose is to investigate possible waste or mismanagement, she must also adduce evidence of potential mismanagement sufficient to support her suspicions and to warrant going forward."). While stockholders have the burden of coming forward with specific and credible allegations sufficient to warrant a suspicion of waste and mismanagement, they are not required to prove by a preponderance of the evidence that waste and management are actually occurring.[3]

▮▮ A general standard that a stockholder seeking inspection of books and records

---

**2.** While a stockholder has the burden to show a proper purpose for an inspection of books and records, the corporation has the burden of showing an improper purpose when a stockholder seeks only to inspect the stockholder list. 8 Del.C. § 220(c). The trial court held that plaintiff "has established a proper purpose for seeking inspection of Leviton's shareholder list," and the corporation failed to meet its burden that plaintiff's purpose was improper. *Thomas & Betts, supra,* slip op. at 10–11.

**3.** The Revised Model Business Corporation Act requires that a stockholder "describe with reasonable particularity his purpose and the records he desires to inspect." *Revised Model Business Corp. Act* § 16.02(c). *See Grimes v. Donald,* 673 A.2d 1207, 1217 (1996), for an analogous discussion of the reasonable doubt, or reason to believe, standard in the context of a derivative suit. Contrary to plaintiff's assertion in the instant case, this Court in *Grimes* did not suggest that its reference to a Section 220 demand as one of the "tools at hand" was intended to eviscerate or modify the need for a stockholder to show a proper purpose under Section 220. *Id.* at 1216 n. 11 (noting that Section 220 can be used to secure information to support demand futility).

bears "a greater-than-normal evidentiary burden" is unclear and could be interpreted as placing an unduly difficult obstacle in the path of stockholders seeking to investigate waste and mismanagement. Viewed in context, however, the articulation in dispute here accurately describes a stockholder's position in cases such as the one at bar, where substantial evidence supports a finding that plaintiff's primary motives for the inspection are improper.

In the final analysis, the decision of the trial court did not turn solely on a legal conclusion that Thomas & Betts had failed to meet an elevated evidentiary burden. As discussed further, *infra*, the trial court's determination turned, in large part, on the Vice Chancellor's determination that plaintiff's witnesses were not credible. According appropriate deference to the factual findings of the Court of Chancery, we conclude that plaintiff failed to satisfy the appropriate standard for inspection of the books and records with regard to the claim of waste and mismanagement. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972) ("When the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge, his findings will be approved upon review."); *State ex rel. Scattered Corp.,* Del.Supr., No. 444, 1995, Veasey, C.J. (April 4, 1996) (ORDER) ("The determination of whether Scattered's stated purpose for the inspection was its primary purpose, is a question of fact warranting deference to the trial court's credibility assessments.")

■ Thomas & Betts argues that the trial court erroneously characterized as hearsay certain witness statements concerning Blumberg's discussions with Thomas & Betts. Where an in-court witness testifies to the substance of statements made by an out-of-court declarant and the testimony is offered to prove the truth of the matter asserted, a hearsay problem arises. This is precisely the situation faced by the trial court. Plaintiffs did not call Blumberg to the witness stand. Rather, various Thomas & Betts insiders sought to prove that waste and mismanagement had occurred at Leviton by testifying to the substance of statements made by Blumberg during his negotiations with Thomas & Betts.

■ Plaintiff contends, however, that the statements were not offered to prove the truth of the matter asserted, but were intended to show that Thomas & Betts believed that waste and mismanagement were occurring at Leviton (*i.e.,* to show Thomas & Betts' state of mind). This argument is unavailing in light of the discussion above. Thomas & Betts' subjective belief that wrongdoing has occurred is insufficient to meet the evidentiary burden required to compel inspection. Plaintiff's contention that testimony concerning Blumberg's statements falls within the hearsay exception of *D.R.E.* 801(d)(2)(D) is similarly unavailing. *D.R.E.* 801(d)(2)(D) allows hearsay testimony of an agent or servant concerning matters within the scope of his agency or employment. Here, Blumberg was acting in his capacity as a stockholder of Leviton when the statements were made. Moreover, as the trial court found, Blumberg was actively engaged in the process of defecting to the Thomas & Betts camp. Statements made in this context lack independent guarantees of trustworthiness and are inherently unreliable. The trial court was correct in so concluding.

More significantly, the trial court did not exclude this testimony. Rather, the Vice Chancellor heard the testimony and found it unworthy of belief. In this posture, plaintiff's evidentiary objections carry little weight. Similarly, Thomas & Betts' citation to *Skoglund v. Ormand Industries* is unavailing. *Skoglund,* 372 A.2d at 208, 211–13. As in the case at bar, the *Skoglund* court allowed hearsay testimony regarding statements made by a corporate insider. Unlike the instant case, however, the trial court in *Skoglund* chose to credit that testimony as worthy of belief.

Finally, plaintiff's arguments ignore the underlying posture of this case. Unlike the cases relied on by plaintiff, this case does not involve a typical uninformed stockholder seeking to protect his or her investment. Thomas & Betts acquired its shares in Leviton with the acknowledged purpose of acquiring the company. Moreover, Thomas & Betts did so with full knowledge that Levi-

ton's CEO would likely oppose any such transaction. Thomas & Betts first praised Harold Leviton for his expert management of the company, seeking an amicable union of the two corporations. When Thomas & Betts' friendly overtures proved unavailing, it filed an inspection demand to create leverage. Its self-avowed acquisition motives cast serious doubt on the genuineness of its claim that it seeks the books and records to investigate waste and mismanagement.

These facts were properly before the Court of Chancery. *See, e.g., Helmsman Management Servs.*, 525 A.2d at 164 ("The propriety of a demanding shareholder's purpose must be determined from the facts in each case, and the burden of proving a proper purpose is upon the shareholder."). The Court of Chancery concluded that "Thomas & Betts' initial primary purpose in seeking a books and records inspection was . . . to exert pressure on Harold Leviton to negotiate a sale of his controlling interest or, alternatively, the entire company." *Thomas & Betts, supra*, slip op. at 22. Ultimately, the Court of Chancery found Thomas & Betts' articulated purpose to be "highly opportunistic" and unworthy of belief. Thomas & Betts has provided no reason for this Court to revisit those factual determinations and credibility assessments.

## IV. Facilitating the Equity Method of Accounting

At trial, plaintiff contended that it needed access to certain Leviton records to facilitate use of the equity method of accounting for its Leviton investment. The trial court concluded that: (1) plaintiff's stated accounting purpose is not a proper purpose as contemplated by Section 220 because it is not related to Thomas & Betts' status as a stockholder of Leviton; (2) Thomas & Betts' inability to use the equity accounting method was "a problem of its own making"; and (3) the "factual *bona fides* of Thomas & Betts' contention . . . are highly suspect." *Thomas & Betts, supra*, slip op. at 19. Plaintiff now argues that: (1) the trial court erred in holding that facilitation of equity accounting is not a proper purpose; and (2) it has met the evidentiary burden required to compel inspection. Ac-

cordingly, Thomas & Betts contends that it should be allowed access to a broad array of Leviton internal documents.

Plaintiff's first contention—that the Court of Chancery erred in holding that Thomas & Betts' accounting purpose was improper—is without merit. As the trial court properly recognized, Section 220, by its express language, entitles a stockholder of a corporation to: "inspect for any proper purpose the corporation's stock-ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. *A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. . . .*" 8 *Del.C.* § 220(b) (emphasis supplied).

■ The need to account for the Leviton investment by a particular method stems from Thomas & Betts' relationship with *its own* stockholders and bears no relationship to Thomas & Betts' status as a Leviton stockholder. As the Court of Chancery held in *Lynn v. EnviroSource, Inc.*, Del.Ch., C.A. No. 11770, Chandler, V.C., 1991 WL 80242 (May 13, 1991), "[w]hat is required by . . . section [220] is that the purpose for the demand be reasonably related 'to such person's interest as a stockholder.' That is, the purpose must be something that stockholders would be interested in because of their position as stockholders." Conversely, "[a] purely individual purpose in no way germane to the relationship of stockholder to the corporation is not a proper purpose within the meaning of the statute." *Catalano v. T.W.A.*, Del.Ch., C.A. No. 5352, Hartnett, V.C., mem. op. (Nov. 3, 1977) (citing *State ex rel. Foster v. Standard Oil Co. of Kansas*, Del.Super., 18 A.2d 235 (1941)). The Court of Chancery here correctly concluded that facilitation of equity accounting was not a proper purpose under Section 220. The need for equity accounting stems from Thomas & Betts' position as a publicly held corporation. Thus, it is the relationship of Thomas & Betts to *its* stockholders that created this need and not the relationship of Thomas & Betts to Leviton.

■ Thomas & Betts contends that the trial court overlooked a number of cases where the stockholder's purpose for inspec-

tion was unique to the individual stockholder. The purpose advanced in each of these cases, however, was valuation of shares, the only purpose advanced by Thomas & Betts which the trial court accepted.[4]

Assuming *arguendo* that Thomas & Betts' accounting purpose is deemed proper, it has nevertheless failed to meet its evidentiary burden. Despite Thomas & Betts' insistence on the use of equity accounting and KPMG Peat Marwick's purported concurrence in that view, Thomas & Betts has failed to demonstrate that this is the actual purpose for the information sought. As the trial court found, equity accounting may be used only in instances where the accounting stockholder exercises a degree of control over the company in which it holds an equity stake. GAAP provides that a stockholder with a 20 percent or greater stake enjoys a rebuttable presumption that such influence is exercised.

This presumption has been rebutted in the case of Thomas & Betts' stake in Leviton. Thomas & Betts now owns a 29.1 percent interest in Leviton.[5] Harold Leviton, however, controls a voting trust representing 76.45 percent of the company's voting stock. Thomas & Betts has no representation on the Leviton board. Moreover, Harold Leviton has made it abundantly clear that he will thwart any effort by Thomas & Betts to exercise control, or a lesser measure of influence, over Leviton. On these facts, it is questionable whether Thomas & Betts can even justify use of equity accounting under

GAAP.[6] Thomas & Betts' stated purpose is questionable at best and lacks record support sufficient to warrant granting the requested relief.

## V. The Scope of the Inspection

After trial, the Court of Chancery found that Thomas & Betts had failed to meet its burden of establishing that it sought inspection in furtherance of its concerns regarding accounting and mismanagement. The trial court found that Thomas & Betts' primary purpose for inspection was to further its plans for acquiring Leviton and that this interest was antithetical to the interests of the corporation. Despite Thomas & Betts' initially improper motives, the Court acknowledged that Thomas & Betts had experienced a fundamental change of circumstances. The court reasoned that, owing to Harold Leviton's unwillingness to negotiate a change-of-control transaction, Thomas & Betts was now in the unenviable position of a "locked-in" minority stockholder. Based on this fact, the trial court allowed inspection of certain Leviton books and records, but limited the scope of that inspection to those documents which are "essential and sufficient" to Thomas & Betts' valuation purpose. Thomas & Betts now contends that the Court of Chancery abused its discretion in limiting the scope of its inspection of Leviton's books and records.

Absent any apparent error of law, this Court reviews for abuse of discretion the

4. For example, in *Ostrow*, inspection was granted on the basis of two purposes advanced by the plaintiffs, *viz.*, "the valuation of their shares, especially in connection with a possible exercise of a contractual right to put those shares to the Company; and secondly, the investigation of possible fraud or breach of duty on the part of [the CEO]...." *Ostrow v. Bonney Forge*, Del.Ch., C.A. No. 13270, Allen, C. (April 6, 1994). In *State ex rel. Nat'l Bank v. Jessup & Moore Paper Co.*, Del.Super., 88 A. 449 (1913), the stockholder sought inspection for the purpose of valuing shares held in a non-publicly traded company. The fact that the stockholder was a bank and needed to account to a regulatory agency for the value of these shares was of no moment. Valuation is a proper purpose for inspection. Finally, the related case of *State ex rel. Brumley v. Jessup & Moore Paper Co.*, Del.Super., 83 A. 30 (1912), involved an inspection request by a stockholder who had received her shares by devise from her

deceased husband. As in *National Bank, supra,* the *Brumley* plaintiff simply wanted to value her shares.

5. Thomas & Betts purchased from the Blumberg family 29.1% of Leviton's outstanding shares. Included in this block of shares is 23.55% of Leviton's Class A voting stock.

6. When Leviton's Chief Financial Officer reviewed a draft of Thomas & Betts' press release announcing the purchase of Blumberg's shares, he suggested that Thomas & Betts delete the reference to its intention to account for the investment using the equity method of accounting. He informed Thomas & Betts that Leviton would not provide the information he believed was necessary to use this method of accounting. Thomas & Betts publicly committed, nevertheless, to use the equity method with full knowledge of the difficulties it could face.

decision of the trial court regarding the scope of a stockholder's inspection of books and records. 8 *Del.C.* § 220(c); *CM & M Group*, 453 A.2d at 794. The plaintiff bears the burden of proving that each category of books and records is essential to accomplishment of the stockholder's articulated purpose for the inspection. *Helmsman Management Servs.*, 525 A.2d at 168.

 The plain language of 8 *Del.C.* § 220(c) provides that "[t]he Court may, *in its discretion*, prescribe any limitations or conditions with reference to the inspection." (emphasis supplied). The responsibility of the trial court to narrowly tailor the inspection right to a stockholder's stated purpose is well established. *See BBC Acquisition Corp.*, 623 A.2d at 88–89 (entitlement is restricted to those books and records needed to perform the task). In discharging this responsibility, the trial court has wide latitude in determining the proper scope of inspection. Undergirding this discretion is a recognition that the interests of the corporation must be harmonized with those of the inspecting stockholder.

Here, the trial court has found that Thomas & Betts' primary purpose for inspection is at odds with the interests of the corporation. In this posture, it was entirely appropriate for the Court of Chancery to limit plaintiff's inspection to those documents which are essential and sufficient to its valuation purpose.

Moreover, even in a case where no improper purpose has been attributed to the inspecting stockholder, the burden of proof is always on the party seeking inspection to establish that each category of the books and records requested is essential and sufficient to the stockholder's stated purpose. *Helmsman Management Servs.*, 525 A.2d at 167. The trial court specifically found that Thomas & Betts had not met its burden of proof as to certain of the books and records of Leviton. This finding is supported by the record and is the product of an orderly and logical deductive process. *Levitt*, 287 A.2d at 673. Accordingly, the finding of the Court of Chancery and its concomitant decision to limit inspection will not be disturbed on appeal.

## VI. Conclusion

We **AFFIRM** the order of the Court of Chancery.