**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ZINNAH INVESTMENTS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0577-SEM |
| | ) | |
| XYLECO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER FOR PRODUCTION OF BOOKS AND RECORDS
SUBJECT TO A CONFIDENTIALITY ORDER[1]**

WHEREAS, on September 22, 2010, Zinnah Investments Limited (the "Plaintiff") acquired 200,000 shares of Xyleco, Inc. (the "Defendant") through a subscription agreement (the "Subscription Agreement");[2]

WHEREAS, the Subscription Agreement provides in Section 2.14:

Confidentiality; Publicity. The Subscriber [(the Plaintiff)] agrees that, except with the prior written consent of the Company [(the Defendant)] and as required by law, it shall at all times keep confidential and not divulge, furnish or make accessible to anyone any confidential information, knowledge or data concerning or relating to the business or financial affairs of the Company to which the Subscriber has been or shall become privy. The provisions of this Section 2.14 shall be in addition to, and not in substitution for, the provisions of any separate confidentiality or nondisclosure agreement executed by the parties hereto. Without limiting the generality of the foregoing, the Subscriber

---

[1] This is a post-trial ruling, for which I rely upon the record developed at the half-day paper trial on October 12, 2023. *See* Docket Item ("D.I.") 41, 42. I grant the evidence the weight and credibility I find it deserves. The parties' jointly submitted exhibits are cited as "JX__."

[2] JX2. Although I have considered the entire record before me, the factual findings in this order are limited only to those necessary to address the few issues that remain in dispute. Interested readers are directed to the docket for a complete background.

agrees that the terms and conditions of this Agreement, including its existence, will be confidential information and will not be disclosed to any third party except as provided herein; provided, however, that the Subscriber will be able to disclose the existence of the Agreement as necessary to his or her accountants, legal counsel and investment representatives, in each case only where such persons or entities are under appropriate confidentiality or nondisclosure obligations. Any public disclosure of the consummation of the transactions contemplated by this Agreement shall be made only with the prior written consent of the Company.

WHEREAS, on February 1, 2023, the Plaintiff served a demand for inspection of the Defendant's books and records (the "Demand");[3] on February 15, 2023, after several objections and reserving all rights, the Defendant responded it was "willing to provide to [the Plaintiff] by email PDF copies of non-privileged documents responsive to the Demand, to the extent doing so does not result in undue expense or burden and subject to the [Plaintiff] entering into an appropriate confidentiality agreement[;]"[4] but, the parties remain unable to agree to "an appropriate confidentiality agreement[;]"[5]

---

[3] JX12.

[4] JX13 at 2.

[5] In pre-suit communications, the parties disputed which should come first—a list of documents to be produced or an agreed upon confidentiality agreement. *See* JX 15. The Plaintiff stood firm that the list should come first because "[i]f [the Defendant] will not provide the requested documents, then there is no need for a confidentiality agreement." *Id.* The Defendant did "not see any reason for th[e] burdensome exercise" of compiling such a list with the Plaintiff's seeming "reluctance to sign or even respond to the confidentiality agreement[.]" *Id.* That reluctance continued after this action was filed. *See, e.g.*, JX17 ("Since such information is required to be provided pursuant to Delaware law – and since [the Plaintiff] has been forced to make the Section 220 demand due to delay – [the Plaintiff] is not willing to enter into a confidentiality agreement at this time").

WHEREAS, on May 31, 2023, the Plaintiff initiated this action, which was assigned to me by the Chancellor;[6] in her assignment letter, the Chancellor instructed the parties to meet and confer to "attempt to minimize the scope of disputes presented to" me;[7] the Defendant took the lead through a June 20, 2023 letter proposal (the "Proposal");[8] via the Proposal, the Defendant mooted three of the nine requests in the Demand, offered production (at least in part) for five of the requests, and, for the final request, the Defendant confirmed no such document existed;[9] but, the Proposal was "subject to an appropriate confidentiality undertaking by" the Plaintiff;[10] the Plaintiff disagreed with this "insistence" on a confidentiality agreement and the matter was teed up for trial;[11]

WHEREAS, before trial, I resolved discovery disputes raised in the Defendant's motion to compel (the "Motion");[12] I granted the Motion in part, barring the Plaintiff "from introducing new, non-public documentary evidence at trial," compelling the Defendant "to answer Interrogatory No. 20[,]" but ordering no

---

[6] D.I. 1, 7.

[7] D.I. 7.

[8] JX19.

[9] *Id.*

[10] *Id.*

[11] *See* JX20; JX23; D.I. 17.

[12] D.I. 31.

further production or response;[13] Interrogatory No. 20 asked the Plaintiff to "[s]tate whether [the Plaintiff is] seeking books and records beyond those that the [Defendant] offered to produce" in the Proposal;[14] the amended response (the "Response") was served on October 3, 2023, after the pretrial conference;[15] the Response reflected only two disputes: (1) production of stockholder addresses and (2) the Plaintiff's ability to reserve the right to seek additional documentation related to its third and fourth requests in the Demand;[16] otherwise, the Plaintiff confirmed that the remaining requests in the Demand were either mooted by the Proposal or that the Plaintiff "does not presently seek documents beyond what is offered" in the Proposal;[17]

WHEREAS, at the pretrial conference, I encouraged the parties to discuss (or continue to discuss) the remaining issues in dispute;[18] to that end, the Plaintiff circulated a proposed confidentiality agreement on October 10, 2023 (two days before the scheduled trial);[19] the email discussions that followed laid bare two

---

[13] *Id.*

[14] *See* D.I. 26; JX35.

[15] JX35.

[16] *Id.*

[17] *Id.* At trial, the Plaintiff changed its position for the ninth category, which is addressed, and rejected, herein. *Infra* n.39.

[18] *See* D.I. 39.

[19] JX36.

4

disputes: whether the confidentiality agreement should (1) permit the Plaintiff to share the produced books and records with other stockholders and (2) include an agreement that if the Plaintiff elects to file a complaint based on the production, that the entire production be deemed incorporated by reference therein;[20]

WHEREAS, these limited remaining issues (the two scope disputes and two confidentiality disputes) were tried on a paper record on October 12, 2023;[21] this is my post-trial ruling;

WHEREAS, "[t]o inspect books and records under Section 220, a plaintiff must establish by a preponderance of the evidence that the plaintiff is a stockholder, has complied with the statutory form and manner requirements for making a demand, and has a proper purpose for conducting the inspection[;]"[22] "[i]f a stockholder meets these requirements, the stockholder must then establish 'that each category of the books and records requested is essential and sufficient to the stockholder's stated purpose[;]'"[23]

---

[20] JX37.

[21] D.I. 41.

[22] *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *9 (Del. Ch.), *judgment entered*, 2020 WL 7773438 (Del. Ch. Dec. 28, 2020).

[23] *Id.* (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 681 A.2d 1026, 1035 (Del. 1996)).

WHEREAS, valuation "has long been recognized as a proper purpose" to inspect books and records;[24] a stockholder's desire to investigate wrongdoing is also a proper purpose, but "[a] mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad § 220 inspection relief[;]"[25] rather, the stockholder "need only establish by a preponderance of the evidence that there is a credible basis to suspect a *possibility* of wrongdoing[;]"[26]

WHEREAS, "[t]he scope of inspection is a fact-specific inquiry, and the court has broad discretion when conducting it[;]"[27] the Plaintiff "bears the burden of proving that each category of books and records is essential to accomplishment of the stockholder's articulated purpose for the inspection[;]"[28] "the court must give the petitioner everything that is 'essential,' but stop at what is 'sufficient[;]'"[29]

---

[24] *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 685 A.2d 702, 713 (Del. Ch. Dec. 19, 1995), *aff'd*, 681 A.2d 1026 (Del. 1996) (citing *CM & M Gp., Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982)).

[25] *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165–66 (Del. Ch. 1987).

[26] *Pettry*, 2020 WL 6870461, at *11 (emphasis in original) (citing *Lebanon Cnty. Emps. Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *8–9 (Del. Ch. Jan. 13, 2020)).

[27] *Hightower v. SharpSpring, Inc.*, 2022 WL 3970155, at *8 (Del. Ch. Aug. 31, 2022) (citing *NVIDIA Corp. v. City of Westland Police & Fire Ret. Sys.*, 282 A.3d 1, 26–27 (Del. 2022), as revised (July 25, 2022)).

[28] *Thomas & Betts Corp.*, 681 A.2d at 1035 (Del. 1996)).

[29] *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 751–52 (Del. 2019) (citing *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775 (Del. Ch. Feb. 2, 2016)).

WHEREAS, "Section 220 vests the Court of Chancery with discretion to 'prescribe any limitations or conditions with reference to' a books-and-records inspection[;]"[30] "in determining whether to impose or lift confidentiality restrictions, the Court of Chancery 'should weigh the stockholder's legitimate interests in free communication against the corporation's legitimate interests in confidentiality[;]'"[31]

WHEREAS, in *Amalgamated Bank*, Vice Chancellor Laster found that the stockholders demonstrated a credible basis to suspect breach of fiduciary duty, ordered inspection of related documents, and conditioned that inspection on the stockholder "agreeing that the entirety of the company's production in response to the Demand is incorporated by reference in any derivative action complaint it files relating to the subject matter of the demand;"[32] the Vice Chancellor reasoned that "[i]mposing the condition helps balance [the company's] rights against those of the plaintiff by recognizing that the production as a whole should provide the basis for any follow-on complaint, not just a handful of isolated documents or emails[;]"[33]

**IT IS HEREBY ORDERED**, this 23rd day of October 2023, as follows:

---

[30] *Hauppauge Digit., Inc. v. Rivest*, 2023 WL 4440279, at *3 (Del. 2023) (citing 8 *Del. C.* § 220 (c)(3)).

[31] *Id.* at *4 (quoting *Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 935 (Del. 2019)).

[32] *Amalgamated Bank*, 132 A.3d at 796, *abrogated in other part by Tiger*, 214 A.3d 933 (Del. 2019) (cleaned up).

[33] *Id.* at 798.

1. In large part, my analysis is limited to the Proposal and the Response, through which the parties have narrowed the remaining disputes for my consideration. The Defendant is not challenging the form and manner of the Demand, nor the stated purpose of valuation. The Defendant does, however, challenge the other stated purpose for the Demand—the investigation of wrongdoing. Although a minimal burden, I find the Plaintiff did not establish by a preponderance of the evidence that there is a credible basis to suspect a possibility of wrongdoing. Thus, where there remains a dispute regarding the scope of production, I resolve that dispute by ordering production only of those documents necessary and essential to the Defendant's valuation purpose.

2. Subject to an acceptable confidentiality agreement, the Defendant shall produce the following categories of books and records:

    a. Request No. 1: The most recent stock ledger, including the names of all the Defendant's stockholders of record, the number of shares registered in the name of each such stockholder, and where all issuances and transfer of stock are recorded.[34]

    b. Request No. 3: The resolution of the Defendant's board of directors and action by written consent of the stockholders approving the

---

[34] This order excludes the requested addresses, which are not necessary and essential to the Defendant's valuation purpose.

Second Amended and Restated Certificate of Incorporation dated September 10, 2012.[35]

c. Request No. 5: Written records of actions by the stockholders in lieu of annual meetings from 2011 through 2022.[36]

d. Request No. 6: The sales brochure and appraisal for the facility located at 3741 Rd N NE, 98837 Moses Lake, Washington State; the closing binder for the sale to Sila Nanotechnologies Inc.; a set of diligence materials; the written offers received on the property; the revisions to the purchase agreement; and the relevant portions of the board minutes approving the sale.[37]

e. Request No. 7: The audited financial reports for the year ending December 31, 2022, within 10 days of those reports being finalized and available for production.[38]

---

[35] The Plaintiff's request to reserve the ability to seek additional documentation is DENIED. This action was the Plaintiff's opportunity to investigate what responsive documents exist and demonstrate the scope of documents necessary and essential to the Plaintiff's purpose for inspection. The Plaintiff made the strategic decision not to uncover such information through discovery and should bear the cost of the resulting uncertainty.

[36] The Plaintiff's request to reserve the ability to seek additional documentation is DENIED for the same reasons articulated for Request No. 3.

[37] This is the production offered in the Proposal and agreed to through the Response.

[38] Request No. 7 sought "the last five audited annual reports and financial accounts." JX12. The Defendant confirmed that the last five audited reports were from 2011–2016 and that audited reports do not exist from 2016 through present. The Defendant is currently working on audited financial statements for the year ending December 31, 2022. The Defendant shall produce those audited statements within 10 days of completion. Production of the

9

3. Production in response to the remaining requests in the Demand is hereby DENIED.[39]

4. The parties should meet and confer on a confidentiality order that (1) does not permit the Plaintiff to share the above-ordered production with other stockholders and (2) does not include an agreement to incorporate by reference such production in future plenary litigation.[40]

---

2011–2016 statements or unaudited financials for the last five years is DENIED because it is outside the scope of the Plaintiff's purpose. JX12.

[39] The only remaining dispute relates to Request No. 9, through which the Plaintiff sought the Defendant's business plan for calendar year 2023. JX12. The Proposal revealed the Defendant does not have a written business plan, but the Defendant offered to meet with one or more of the Plaintiff's representatives to discuss the Defendant's current operations and plans, confidentially, if desired. JX19. The Response confirmed that the Plaintiff did "not presently seek documents beyond what is offered" in the Proposal for Request No. 9. JX35 at 3. But the Plaintiff changed course at trial, representing that it was seeking board level documents. I hold the Plaintiff to the Response. *See Fuchs Fam. Tr. v. Parker Drilling Co.*, 2015 WL 1036106, at *4, *7 (Del. Ch. Mar. 4, 2015) (rejecting a Section 220 plaintiff's late stage attempts to expand its inspection). Further, I find no basis to compel the Defendant to have the offered discussion; such appears far outside the summary and narrow scope of this action. *See* 8 *Del. C.* § 220(c).

[40] The Subscription Agreement imposes strict confidentiality restrictions, which the Plaintiff accepted. I see no basis to relieve the Plaintiff of that acceptance and find the Subscription Agreement reflects the Defendant's memorialization of its legitimate interest in maintaining confidentiality. Further, having limited the Plaintiff's production to its valuation purpose, I give little weight to the Plaintiff's interest in communicating with the other stockholders; the Defendant's interest in confidentiality weighs heavier. Moreover, I find the Vice Chancellor's reasoning in *Amalgamated Bank* inapposite here. There, the stockholder stated a credible basis to suspect wrongdoing and investigate potential breaches of fiduciary duty; follow-on plenary litigation was likely. Here, I recommend production be limited to valuation because the Plaintiff has failed to demonstrate a credible basis to investigate wrongdoing. Thus, there is a much lower likelihood of directly related follow-on plenary litigation to which incorporation by reference would avoid prejudice to the Defendant and aid this Court's review and consideration. Unless the parties agree

10

5.     This is a final report under Court of Chancery Rule 143 and exceptions may be filed under Court of Chancery Rule 144(d)(2), within three business days.

**IT IS SO ORDERED.**

/s/ Selena E. Molina
Magistrate Selena E. Molina

---

otherwise, the Plaintiff need not agree to incorporation by reference to receive the confidential production ordered herein.