**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SDAS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-0165-SEM |
| | ) | |
| GENEVE HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER FOR PRODUCTION OF BOOKS AND RECORDS
SUBJECT TO A CONFIDENTIALITY ORDER[1]**

WHEREAS, SDAS, LLC (the "Plaintiff") a stockholder of Geneve Holdings, Inc. (the "Defendant," with the Plaintiff, the "Parties") seeks a court-ordered production of the Defendant's books and records, as requested in the Plaintiff's November 2024 demand (the "Demand");

---

[1] This is a summary-judgment ruling, for which I rely upon the record developed by the parties in connection with their briefing. *See* Docket Item ("D.I.") 34–37, 41–42, 44, 45, 48. I have carefully considered the entire record before me, but decline to delay this ruling by crafting, editing, and polishing a detailed recitation thereof. The parties' evidentiary objections, including the expert- and settlement-related concerns, are overruled. I further reject the Defendant's argument that the Plaintiff's motion lacks the affidavit required under Court of Chancery Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). The record before me is sufficient to resolve the few issues that remain. Moreso, the briefing and argument confirmed that the material facts are not in genuine dispute and, as such, I "deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions[,]" under Court of Chancery Rule 56(h).

1

WHEREAS, the Parties negotiated the scope and parameters of production under the Demand for several months before reaching an impasse and seeking relief;

WHEREAS, teed up for my review on cross-motions for summary judgment are disputes about the Plaintiff's purpose and the restrictions that should be imposed on the court-ordered production;

WHEREAS, "[t]o inspect books and records under Section 220, a plaintiff must establish by a preponderance of the evidence that the plaintiff is a stockholder, has complied with the statutory form and manner requirements for making a demand, and has a proper purpose for conducting the inspection[;]"[2] "[i]f a stockholder meets these requirements, the stockholder must then establish 'that each category of the books and records requested is essential and sufficient to the stockholder's stated purpose[;]'"[3]

---

[2] *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *9 (Del. Ch.), *judgment entered*, 2020 WL 7773438 (Del. Ch. Dec. 28, 2020). Because the Demand was served before February 17, 2025, the retroactivity date for the recent amendments to Section 220, the prior version applies. *See* Del. Sen. Sub. 1 for S.B. 21, 153rd Gen. Assem. § 3 (Mar. 24, 2025) ("Sections 1 and 2 of this Act take effect on the enactment of this Act and apply to all acts and transactions, whether occurring before, on, or after the enactment of this Act, except that Sections 1 and 2 of this Act do not apply to or affect any action or proceeding commenced in a court of competent jurisdiction that is completed or pending, or any demand to inspect books and records made, on or before February 17, 2025.").

[3] *Pettry*, 2020 WL 6870461, at *9 (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996)).

WHEREAS, the purposes stated in the Demand are valuation and to investigate wrongdoing; these are proper purposes under Delaware law;[4] the Defendant contests the Plaintiff's true purpose; "once a stockholder has identified a proper purpose, . . . the burden shifts to the corporation to prove that the stockholder's avowed purpose is not her actual purpose and that her actual purpose for conducting the inspection is improper[;]"[5]

WHEREAS, the Defendant contends that its improper purpose arguments support protecting any court-ordered production through a confidentiality order; "Section 220 vests the Court of Chancery with discretion to 'prescribe any limitations or conditions with reference to' a books-and-records inspection[;]"[6] "in determining whether to impose or lift confidentiality restrictions, the Court of Chancery 'should weigh the stockholder's legitimate interests in free communication against the corporation's legitimate interests in confidentiality[;]'"[7]

---

[4] Valuation "has long been recognized as a proper purpose" to inspect books and records. *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 685 A.2d 702, 713 (Del. Ch. Dec. 19, 1995), *aff'd*, 681 A.2d 1026 (Del. 1996) (citing *CM & M Gp., Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982)). And a stockholder's desire to investigate wrongdoing is also a proper purpose if supported by a credible basis to suspect wrongdoing. *See Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165–66 (Del. Ch. 1987).

[5] *Woods Tr. of Avery L. Woods Tr. v. Sahara Enters., Inc.*, 238 A.3d 879, 891 (Del. Ch.), *judgment entered sub nom. In re Woods v. Sahara Enters., Inc.* (Del. Ch. 2020).

[6] *Hauppauge Digit., Inc. v. Rivest*, 2023 WL 4440279, at *3 (Del. 2023) (citing 8 *Del. C.* § 220 (c)(3)).

[7] *Id.* at *4 (quoting *Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 935 (Del. 2019)).

3

WHEREAS, specifically, the Defendant requests that the agreed-upon production[8] be contingent on (1) Donald Netter, the Plaintiff's sole manager, being personally bound to the confidentiality agreement and (2) the agreement limiting any receiving party's use to the purposes in the Demand; the Plaintiff has agreed to (2), subject to how "receiving party" is defined, but contends (1) is unprecedented and unsupported;

WHEREAS, within their exhibits, the Parties submitted competing forms of confidentiality orders, which were discussed at oral argument on July 8, 2025;[9]

WHEREAS, the Plaintiff also asks that fees be shifted in its favor under the bad faith exception to the American Rule; "[u]nder the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs[;]"[10] there are several exceptions:

> For example, fees may be shifted if: (i) recovery of fees is provided by statute or court rule; (ii) there is a contractual provision regarding entitlement to attorneys' fees; (iii) a party has acted in bad faith in connection with the conduct of the litigation process; (iv) a party fails to abide by a court order or is held in contempt; and (v) the action results in the creation, protection or distribution of a common fund or confers a corporate benefit[;][11]

---

[8] The agreed-upon production consists of 122 documents as discussed at the July 8, 2025 hearing.

[9] *See* D.I. 48, Ex. RR; D.I. 52.

[10] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007).

[11] *In re Del. Pub. Schs. Litig.*, 312 A.3d 703, 716 (Del. 2024).

WHEREAS, the bad faith exception "includes cases where the litigation process itself is conducted in bad faith. In such cases, the fees typically awarded are the additional fees incurred as a result of the bad faith conduct[;]"[12]

**IT IS HEREBY ORDERED**, this 24th day of July 2025, as follows:

1.      The Defendant's agreed production shall be subject to a confidentiality agreement that (a) includes Mr. Netter in the definition of "receiving party," requiring him to adhere to the restrictions therein and (b) provides for injunctive relief to address violations thereof. The Parties shall meet and confer on an appropriate form of order, which would accomplish the dictates herein.

2.      I dispose of a few disputes quickly:

a.      The Plaintiff has proper purposes for a court-ordered production. The Defendant, to some extent, challenged the propriety or sincerity of the Plaintiff's purposes. These challenges, if anything, inform my ruling on appropriate restrictions on the agreed production and do not, on the record before, provide a basis on which to deny a court-ordered production.[13]

---

[12] *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231–32 (Del. Ch. 1997), *aff'd*, 720 A.2d 542 (Del. 1998).

[13] In so holding, I reject the Plaintiff's waiver and estoppel arguments.

b.  The scope of production has been settled. Although noting that the Plaintiff did not brief scope, the Defendant has emphasized its willingness to produce the agreed-upon records, subject to confidentiality restrictions. The Plaintiff has not argued that such universe is insufficient or that additional records are necessary and essential to its purpose. I need not address scope any further.

c.  Despite their disconnect on the parameters of any confidentiality agreement, the Parties agree that some level of court-ordered confidentiality is warranted in connection with a court-ordered production. Thus, I need not engage with the Parties' burden dispute on who must prove a need for confidentiality; I hold the Parties to their agreement that some level is warranted and apply the well-worn balancing test to determine the necessary and appropriate protections.

d.  The Plaintiff's request for fee shifting is denied because the Plaintiff has not demonstrated that the Defendant litigated in bad faith. The Parties largely resolved this action, except for the confidentiality issues addressed herein. At most, the Plaintiff has highlighted a disconnect between the Parties' understanding of their resolution, which led me to express some concern at our

6

scheduling teleconference. This falls short, however, of the glaringly egregious conduct that would warrant bad faith fee shifting.

3.   The meat of the Parties' dispute is whether they should be required to enter into a confidentiality agreement which would bind Mr. Netter. I find they should, but not in the way proposed by the Defendant.

    a.   Mr. Netter shall be included within the definition of "receiving parties," as an agent of the Plaintiff. This is consistent with the Delaware Supreme Court's ruling in *CM & M Group, Inc. v. Carroll*.[14]

    b.   The Plaintiff shall also be required to protect the information disclosed to its agents with a reasonable amount of care and shall be liable for any agent's breach. In so holding, I am again following *CM & M Group, Inc. v. Carroll*, where the Delaware Supreme Court called out agents to be bound by the non-disclosure provisions, but limited future sanctions for violations

---

[14] 453 A.2d 788 (Del. 1982). In *CM & M*, the court remanded a books and records action to this Court with a direction that this Court make inspection contingent on a confidentiality order which would bind the plaintiff and any of the plaintiff's agents from disclosure. *Id.* at 794.

thereof to the stockholder plaintiff.[15] I am also following the lead of then-Master LeGrow in *Quantum Technology Partners IV, L.P. v. Ploom, Inc.*[16] and *Schoon v. Troy Corp.*[17]

    c.    The agreement shall also expressly provide that specific performance and injunctive relief are available to remedy violations by any "receiving party," which, again, will include Mr. Netter.[18]

---

[15] *Id.* (emphasizing that violation of the confidentiality agreement should expose the stockholder plaintiff to liability, without providing the same for agents thereof).

[16] 2014 WL 2156622 (Del. Ch. May 14, 2014). *Quantum* was a books-and-records action with similar confidentiality disputes. Therein, now-Justice LeGrow lamented: "The parties' mutual failure to discuss in good faith (or, more accurately, at all) the appropriate parameters of a confidentiality agreement leaves this Court with the unwelcome task of finding an appropriate middle ground between the at-times extreme positions taken by both sides." *Id.* at *14. She then meticulously did so, providing a balanced definition of "competitor," "confidential information," and "highly confidential information." *Id.* at **15–16. Most analogous to the issues before me, Justice LeGrow rejected a request that the plaintiff ensure all recipients adhere to the confidentiality agreement and be liable for any breaches thereby. *Id.* at *18. Justice LeGrow held: "This proposal extends too far and could significantly chill [the plaintiff's] ability to market its shares." *Id.* In so holding, she drew a distinction between principal liability for agents versus the requested liability for third parties; the former being appropriate and the latter a step too far. *Id.*

[17] 2006 WL 1851481 (Del. Ch. June 27, 2006). In *Schoon v. Troy Corp.*, Vice Chancellor Lamb addressed disputes about the types of information that could be disclosed, and under what circumstances, to third-party potential purchasers of the stockholder plaintiffs' shares. The Vice Chancellor, in pertinent part, approved a confidentiality order which permitted disclosure to a "Level Two Competitor," as defined by the parties, pursuant to a confidentiality agreement which restricted certain information from disclosure to officers or employees of that competitor if they were engaged in directly competitive business. *Id.* at *5. That non-competing officers and employees of these third parties would be permitted access is telling and persuasive to my decision herein.

[18] *See Quantum Tech. P'rs IV, L.P.*, 2014 WL 2156622, at *18.

8

d.     With these protections, the Defendant's request that I require Mr. Netter to sign the agreement, or a personal undertaking, rendering him personally liable is a step too far.[19]

4.     For these same reasons, the use restriction, which is largely uncontested, should be drafted to apply to all "receiving parties," which will include Mr. Netter as agent of the Plaintiff.

5.     The Parties should meet and confer on an agreement that will meet this call. The Parties expressed concerns about other provisions in the various draft agreements that they prepared, circulated, and negotiated. The record before me, and

---

[19] In addition to *CM & M*, the Defendant relies heavily on *Jefferson v. Dominion Holdings, Inc.*, 2014 WL 4782961, at *2 (Del. Ch. Sep. 24, 2014) and *Floreani v. FloSports, Inc.*, 2024 WL 1520182, at *10−11 (Del. Ch. Apr. 9, 2024). Neither support the relief requested. In *Jefferson* this Court ruled: "Any person acquiring access to the books and records should execute a confidentiality undertaking." 2014 WL 4782961, at *2 n.5. But that case dealt with an individual stockholder, who wished to share the books and records with advisors and other stockholders. Here, the dispute is about the access of the sole agent of the stockholder entity, which may only act through that agent. *See In re Dole Food Co., S'holder Litig.*, 110 A.3d 1257, 1261 (Del. Ch. 2015) ("Because of its lack of a body and mind, a corporation only can act through human agents.") (citations omitted). *Floreani* also addressed third parties, rather than the human agent through which an entity stockholder would act. 2024 WL 1520182, at *10−11.

I reject the Defendant's argument that, absent personal liability, the records will not be adequately protected. I have applied the balancing test required and dictate herein a middle ground that provides the protection necessary but avoids making inferences that would disregard agency principles or the corporate form. In so holding, I find the Defendant's suspicions about future conduct and concerns about past acts insufficient to impose any greater restrictions on production.

my more nuanced ruling herein, leaves me unable to simply pick one draft over others. The Parties shall take the laboring oar to effectuate this ruling.

6.     This is a final report, and exceptions may be filed under Court of Chancery Rule 144(d)(2), within three business days. If no exceptions are filed, the Parties should report back within one week on their drafting progress.

**IT IS SO ORDERED.**

*/s/ Selena E. Molina*
Senior Magistrate Selena E. Molina