# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GREENLIGHT CAPITAL OFFSHORE )
PARTNERS, LTD., )
                   )
              Plaintiff, )
                   )
         v. )      C.A. No. 2022-1067-LWW
                   )
BRIGHTHOUSE FINANCIAL, INC., )
                   )
              Defendant. )

## MEMORANDUM OPINION

Date Submitted: September 1, 2023
Date Decided: November 20, 2023

Martin S. Lessner, Elisabeth S. Bradley & M. Paige Valeski, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Robert Lewin, Michele Pahmer & Beth Clark, STEPTOE & JOHNSON LLP, New York, New York; *Counsel for Plaintiff Greenlight Capital Offshore Partners, Ltd.*

Edward B. Micheletti, Lauren N. Rosenello, Trevor T. Nielsen & Mallory V. Phillips, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Counsel for Defendant Brighthouse Financial, Inc.*

**WILL, Vice Chancellor**

Plaintiff Greenlight Capital Offshore Partners, Ltd. is a hedge fund that holds shares in defendant Brighthouse Financial, Inc.—a public holding company that sells insurance products through private subsidiaries. In 2020 and 2021, Brighthouse's stock price jumped after one of its captive insurance subsidiaries issued extraordinary dividends with the approval of the Delaware Department of Insurance. The dividends piqued Greenlight's interest in the captive subsidiary, which Greenlight's principal describes as an "opaque cookie jar" it wishes to peer into.

After a failed FOIA request, Greenlight pivoted to a books and records demand for information about whether Brighthouse's captive insurance subsidiary is over-reserved. Greenlight stated that the purpose of its demand is to determine the value of its Brighthouse shares. Brighthouse rejected the demand on several grounds, including that Greenlight lacks a true proper purpose and that the information sought is both proprietary and unnecessary to value its shares. This Section 220 lawsuit followed.

Although Greenlight proved at trial that it has a proper valuation purpose, it fell short on substantiating the scope of its demand. Even if the captive subsidiary's "cookie jar" were full, the treats inside might remain there. Greenlight only demonstrated its entitlement to a few crumbs.

1

Greenlight concedes that it has a wealth of public information allowing it to value its Brighthouse shares. The requested materials might help Greenlight speculate whether a dividend could potentially issue. But they are (mostly) too removed from the current value of Greenlight's Brighthouse shares to support an inspection. The only information that seems essential to Greenlight's stated purpose is any recent board minutes and formal communications with the Department of Insurance evidencing that a dividend is forthcoming.

## I. BACKGROUND

The following facts were stipulated to by the parties or proven by a preponderance of the evidence at trial.[1] The trial record includes the testimony of a live witness, several deposition transcripts, and 240 joint exhibits.[2]

### A. Brighthouse and Its Subsidiaries

Defendant Brighthouse Financial, Inc. ("Brighthouse") was, until August 2017, a wholly owned subsidiary of MetLife, Inc.[3] In 2016, Brighthouse was incorporated in Delaware to prepare for the spin-off of MetLife's United States retail

---

[1] Joint Pre-trial Stipulation and Order (Dkt. 54) ("PTO").

[2] Facts drawn from exhibits jointly submitted by the parties are referred to by the numbers provided on the parties' joint exhibit list and cited as "JX __" unless otherwise defined. Deposition transcripts are cited as "[Name] Dep." Notice of Lodging (Dkt. 62). Trial testimony is cited as "Einhorn Tr." Trial Tr. (Dkt. 63).

[3] PTO ¶ 17; *see also* JX 197 at 3.

life insurance business.[4] Brighthouse has traded on the NASDAQ since the 2017 MetLife separation.[5]

Today, Brighthouse is a holding company that provides annuity and life insurance products through layers of subsidiaries.[6] Brighthouse's largest subsidiary, Brighthouse Life Insurance Company ("BLIC"), is a subsidiary of Brighthouse Holdings, LLC—a private, wholly owned subsidiary of Brighthouse.[7] BLIC owns Brighthouse Reinsurance Company of Delaware ("BRCD")—a special purpose financial captive insurance company licensed under 18 *Del. C.* § 69.[8]

Insurance companies like BLIC are required to hold reserves for their expected obligations under issued policies.[9] As a captive insurer, BRCD provides reinsurance to BLIC and its affiliate for such reserves.[10] BRCD "assist[s] Brighthouse in managing its capital and risk exposures and support[s] its term life and certain universal life products through the use of affiliated reinsurance arrangements and related reserve financing."[11] Brighthouse relies on "dividends or

---

[4] PTO ¶¶ 17-18.

[5] *Id.* ¶ 19.

[6] *Id.* ¶ 20. Brighthouse has over 20 separate subsidiaries. *Id.* ¶ 29.

[7] *Id.* ¶ 20; *see also* JX 197 at 62.

[8] PTO ¶¶ 21-22; *see also* JX 205 ("Stern Report") at App. A.

[9] PTO ¶ 28.

[10] *Id.*

[11] *Id.* ¶ 23.

other capital inflows from subsidiaries, including BRCD, to meet its obligations and to pay dividends on its common stock."[12]

## B. Brighthouse's Financial Reporting

Brighthouse regularly files quarterly and annual disclosures with the Securities and Exchange Commission (SEC) that include financial statements prepared in accordance with Generally Accepted Accounting Principles (GAAP).[13] Brighthouse's financial statements are filed on a consolidated basis and reflect the value of its subsidiaries, including BRCD.[14] Brighthouse also releases annual reports to stockholders.[15]

BLIC similarly files quarterly and annual financial statements with the SEC, which are prepared in accordance with GAAP. BLIC's public filings disclose information about its subsidiaries, including (indirectly) BRCD.[16] Because it is regulated by state insurance agencies, BLIC also files financial statements with the Delaware Department of Insurance (the "Department") that are prepared in accordance with statutory accounting principles.[17] BLIC's statutory financial

---

[12] *Id.* ¶ 24.

[13] *Id.* ¶ 29.

[14] *Id.*; *see also* JX 209 ("Einhorn Dep.") 66-69; JX 214 (Hoyt expert report) ¶¶ 30, 33.

[15] *See, e.g.*, JX 15; JX 46; JX 67; JX 117; JX 183; JX 197.

[16] PTO ¶ 31; *see, e.g.*, JX 238 at 126.

[17] PTO ¶ 31. Another Brighthouse subsidiary, New England Life Insurance Company (NELICO), files financial statements with the Massachusetts Division of Insurance. These

statements contain information about BRCD, such as BRCD's economic and statutory reserves.[18] These filings are available on Brighthouse's investor relations website.[19]

BRCD also files quarterly and audited annual statutory financial statements with the Department.[20] In addition, BRCD files an annual actuarial report and opinion with the Department.[21] Unlike BLIC's filings, BRCD's submissions to the Department are not publicly available.[22]

## C. Brighthouse's Stock Buybacks and Dividends

Delaware captive insurance companies must provide cash flow information to the Department, which uses it to assess and approve reserves and dividends.[23] In the event of excess capital, the Department may allow captive insurance companies like

---

statements are public and include information about BRCD, since BRCD provides reinsurance to NELICO. *Id.* ¶ 32.

[18] *E.g.*, JX 185 at 293, 295; JX 188 at 224-25; JX 183 at 12; JX 184 at 94, 97.

[19] PTO ¶ 31; *see also Brighthouse Financial, Inc.*, Statutory Filings, https://investor.brighthousefinancial.com/statutory-filings (last visited Nov. 18, 2023); JX 59; JX 90.

[20] PTO ¶ 35.

[21] JX 112.

[22] PTO ¶ 37.

[23] Einhorn Tr. 46.

BRCD to release capital and pay dividends.[24] In each of 2020 and 2021, the Department permitted BRCD to release a $600 million dividend.[25]

Brighthouse first began informing investors of the possibility that BRCD might release reserves in late 2018. During a November 6, 2018 earnings call, for example, Brighthouse's Chief Executive Officer said there was a "possibility" that BRCD might "free up" reserves subject to "regulatory approval" and "over time."[26] In 2019, Brighthouse told investors that BRCD was "robustly capitalized" and that Brighthouse was engaged in discussions with the Department to determine whether excess capital could be released.[27]

After the market closed on February 10, 2020, Brighthouse announced that it had received Department approval for BRCD to issue an extraordinary $600 million dividend.[28] In the same press release, Brighthouse announced that it had repurchased approximately $128 million of its common stock during the fourth quarter of 2019

---

[24] JX 197 at 43.

[25] PTO ¶ 86; *see also* JXs 31-32.

[26] JX 220 at 8 ("[T]here is certainly a possibility, it'll happen over time because it needs regulatory approval, et cetera. So again, like we've said many times, there could be potential opportunities, it's just one of the arrows in the quiver. It's not something that's going to happen tomorrow. But over time, yes, there could be some capital potentially freed up . . . ."); *see also* JX 13 at 9.

[27] JX 16 at 10; JX 19 at 9; *see also* JX 22 at 15 (Brighthouse's CEO stating that he "remain[ed] very comfortable that [the Company] ha[d] excess capital in BRCD" but did not "want to front run the regulators").

[28] JX 31 at 4.

and was authorized to repurchase another $500 million of common stock.[29] Brighthouse's stock closed at $46.60 on February 11—up from $42.11 the day before.[30]

Brighthouse maintained its position on BRCD's strong capitalization in earnings calls through the rest of 2020.[31]

In July 2021, Brighthouse announced the receipt of regulatory approval for a second $600 million dividend from BRCD to BLIC.[32] In the same press release, Brighthouse announced that it had repurchased another $246 million shares and received "new repurchase authorization" for up to an additional $1 billion of its common stock.[33] Brighthouse's shares closed at $44.01 on August 5 (up from $41.47 the prior day) and $47.11 on August 6 (the first trading day after the announcement).[34]

On November 8, 2022, Brighthouse stated that it "would not be looking at BRCD as a source of capital coming to th[e] company going forward, at least in the

---

[29] *Id.*

[30] PTO ¶¶ 67-68.

[31] JX 50 at 8; *see* JX 56 at 14.

[32] JX 72 at 4.

[33] *Id.*

[34] PTO ¶¶ 101-02.

7

immediate future."[35]  Brighthouse did not pay any extraordinary dividend in 2022 or 2023 to date.[36]

### D.    Greenlight and its FOIA Request

After the approval of the second $600 million dividend was announced, plaintiff Greenlight Offshore Capital Partners, Ltd. ("Greenlight") developed an interest in BRCD's reserves.[37]  Greenlight is an investment fund formed under British Virgin Islands law and the record owner of 1,000 shares of Brighthouse common stock.[38]  It beneficially owns over 1,000,000 additional Brighthouse shares.[39]  Greenlight Capital, Inc. is an investment advisor to Greenlight that formulates Greenlight's overall investment strategy and manages its trading activities.[40]  As an advisor to Greenlight and its affiliated entities, Greenlight Capital manages more than 3,000,000 shares of Brighthouse stock.[41]

David Einhorn is the President and co-founder of Greenlight.[42]  He has ultimate decision-making authority over the Greenlight entities' investment

---

[35] JX 170 at 11.

[36] JX 197 at 178.

[37] JX 92 at 4.

[38] PTO ¶¶ 8-9.

[39] *Id.* ¶ 9.

[40] *Id.* ¶ 10.

[41] *Id.* ¶ 11.  At times, Greenlight and Greenlight Capital are collectively referred to as "Greenlight" in this decision and in the parties' briefing.

[42] *Id.* ¶ 13.

8

portfolios, including Greenlight's investment in Brighthouse.[43]  Einhorn is also the primary Greenlight analyst for the entities' investments in Brighthouse.[44]

On September 22, 2021, Einhorn attended an industry meeting hosted by Goldman Sachs where he "pitched" Brighthouse.[45]  One of the meeting attendees suggested that Einhorn pursue a Freedom of Information Act (FOIA) request or a books and records demand to obtain more information about BRCD from Brighthouse.[46]  Einhorn took the advice, wishing to "consider activism and get larger."[47]

Two weeks later, on October 7, Greenlight submitted a FOIA request to the Department.[48]  Greenlight requested various financial statements for BRCD and "documents related to all requests for, approval of and payment of any and all dividends by BRCD since January 1, 2017."[49]  The request was denied on December 9.[50]  Greenlight unsuccessfully appealed the Department's decision.[51]

---

[43] *Id.*

[44] *Id.* ¶ 15.

[45] JX 83; Einhorn Dep. 197.

[46] Einhorn Dep. 197-200; *see* JX 83.

[47] JX 83; *see* Einhorn Dep. 196-97, 199-200.

[48] JX 91.

[49] *Id.*

[50] JX 97.

[51] JX 107; JX 119.

### E. Greenlight's Section 220 Demand

On June 3, 2022, shortly after its FOIA appeal was denied, Greenlight served a demand on Brighthouse pursuant to 8 *Del. C.* § 220.[52] Greenlight's stated purpose for the demand was "to more accurately determine the value" of its Brighthouse shares.[53] It sought, "[i]n particular[,] . . . to determine the true financial impact of BRCD . . . on the value of" the shares.[54]

The demand requested ten categories of documents from Brighthouse:

1. Annual financial statements of BRCD for calendar years 2019, 2020, and 2021;

2. Quarterly financial statements of BRCD for the quarter ending March 31, 2022;

3. Audit opinions on any financial statements referenced in paragraphs [1 or 2] above, and on the financial condition of BRCD for the period 2019-present;

4. Actuarial opinions or reports concerning the reserves held by BRCD for the period 2019-present;

5. Reinsurance Agreements or Treaties between/among BLIC and BRCD in effect during the period 2019-present;

6. BRCD Board of Director materials or analyses presented to the Board of Directors regarding the payment of dividends by BRCD from 2019-present;

---

[52] JX 126 ("Demand").

[53] *Id.* at 2.

[54] *Id.*; *see also* PTO ¶ 129.

7. Documents to/from the [Department] in connection with any request for approval of any dividend payment by BRCD between 2019-present;

8. Cash flow analyses and projections from 2019 through the present supporting the declaration of dividends by BRCD;

9. Board of Director minutes of [Brighthouse], BRCD and BLIC from 2019-present concerning: i. the payment of dividends by BRCD, including the dividend payments made by BRCD on or about February 20, 2020 and August 13, 2021; and ii. the status of BRCD's reserves and whether it is or was determined to be over-reserved; and

10. Correspondence from any auditor or actuary opining as to BRCD being over-reserved for the period 2019 through the present.[55]

In a June 10 letter, Brighthouse refused to provide these materials.[56] Brighthouse suggested that Greenlight's stated valuation purpose was not its actual purpose. It also questioned whether a desire to value an indirect subsidiary of a publicly traded company states a proper purpose under Section 220. Brighthouse observed that Greenlight has all necessary and essential information to value its shares due to Brighthouse's public filings.[57] Finally, Brighthouse stated that the ten categories of requests were overbroad, and that certain information was confidential

---

[55] PTO ¶ 127; *see also* Demand at 6.

[56] JX 127.

[57] *Id.* at 3-4.

and proprietary.[58] Brighthouse offered to meet and confer with Greenlight to discuss the demand.[59]

Greenlight and Brighthouse proceeded to negotiate a confidentiality agreement, which was executed on October 17.[60] Brighthouse nonetheless declined to grant Greenlight access to non-public information.[61] A sticking point was whether Greenlight would be prohibited from trading after receiving confidential materials.[62] Greenlight or its affiliated entities have continued to trade in Brighthouse stock since serving the demand.[63]

## F.    This Litigation

On November 22, 2022, Greenhouse filed a Verified Complaint for Inspection of Books and Records Pursuant to 8 *Del. C.* § 220, raising the same valuation purpose and seeking the same ten categories of documents identified in its demand.[64] Brighthouse answered the complaint on December 21 and advanced several affirmative defenses.[65] Brighthouse maintained that Greenlight lacked a proper

---

[58] *Id.* at 4-5.

[59] *Id.* at 5.

[60] JX 162; *see also* JXs 130-37, 141-42.

[61] JX 181 at 1.

[62] *Compare* JX 130 § 4(e) *with* JX 162 § 4.

[63] JX 192 at 3.

[64] Dkt. 1.

[65] Dkt. 12; JX 182.

12

purpose and that valuation is not its true purpose.[66]  Brighthouse also asserted that Greenlight has all necessary and essential information and that the requested records are confidential.[67]

Trial was held on June 26, 2023, during which Einhorn testified live.[68]  Post-trial briefing was completed on August 21.[69]  On September 1, I declined to permit a sur-reply brief and the matter was taken under advisement.[70]

## II.  LEGAL ANALYSIS

"Section 220 of the Delaware General Corporation law provides stockholders with a qualified right to inspect corporate books and records."[71]  A stockholder invoking this right is required to comply with the statute's form and manner requirements and state a proper purpose.[72]  The stockholder must also "demonstrate by a preponderance of the evidence that 'each category of books and records is essential to accomplish[] the stockholder's articulated purpose for the inspection.'"[73]

---

[66] JX 182 at 18.

[67] *Id.* at 18-19.

[68] *See* Dkts. 58, 63.

[69] *See* Dkts. 64, 67-68.

[70] Dkt. 74.

[71] *Simeone v. The Walt Disney Co.*, 302 A.3d 956, 966 (Del. Ch. July 27, 2023) (citing *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 119 (Del. 2006)); *see* 8 *Del. C.* § 220.

[72] *See* 8 *Del. C.* § 220(b)-(c).

[73] *Lebanon Cnty. Emps.' Ret. Fund v. AmerisourceBergen Corp.*, 2020 WL 132752, at *6 (Del. Ch. Jan. 13, 2020) (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996)), *aff'd*, 243 A.3d 417 (Del. 2020).

The parties agree that Greenlight's demand complied with the statutory form and manner requirements.[74] Their dispute concerns whether Greenlight has a proper primary purpose and, if so, whether Greenlight has all necessary and essential information to satisfy that purpose.

Greenlight proved its valuation purpose. It did not, however, prove that the information it seeks is necessary and essential to value its Brighthouse shares—with limited exceptions.

## A.    Whether Greenlight Has A Proper Purpose for Inspection

A "proper purpose" under Section 220 is one "reasonably related to such person's interest as a stockholder."[75] The demand states that Greenlight's purpose is to "more accurately determine the value" of its equity interest in Brighthouse by assessing the dividend capacity of BRCD.[76] "It is settled law in Delaware that valuation of one's shares is a proper purpose for the inspection of corporate books and records."[77]

---

[74] PTO ¶ 2.

[75] 8 *Del. C.* § 220(b)

[76] Demand at 2.

[77] *Polygon Glob. Opportunities Master Fund v. West Corp.*, 2006 WL 2947486, at *3 (Del. Ch. Oct. 12, 2006) (citing *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982)).

Greenlight concedes that it can presently make a "reasonable estimate" of the value of its Brighthouse shares using Brighthouse's public filings.[78]  But it wishes to reach "a *better* valuation of this investment than is possible" without non-public information.[79]  Books and records inspections for this end are generally permissible.[80]

A purpose of evaluating a company's dividend payment ability has also been deemed proper if it is "part of a more general inquiry" into share value.[81]  "The ability to pay dividends is one of several recognized components of a corporation's fair value."[82]  The fact that Greenlight seeks to learn about the dividend capacity of

---

[78] Einhorn Tr. 31 ("We have a sense of what the value of Brighthouse is, if you assume that there are no further dividends from BRCD.  There's enough disclosure to make a reasonable estimate of what that is.").

[79] *Madison Ave. Inv. P'rs, LLC v. Am. First Real Est. Inv. P'rs, L.P.*, 806 A.2d 165, 177 (Del. Ch. 2002) (emphasis in original).

[80] *Id.* (granting an inspection under the DRULPA where the plaintiff "s[ought] to obtain a better valuation of its investment than is possible using only the market price for units and the information that is publicly available in SEC filings"); *cf. Kosinski v. GGP Inc.*, 214 A.3d 944, 957 (Del. Ch. 2019) ("Plaintiff's belief concerning the value of his stock at the time of the merger does not deprive him of his right to seek corporate records in order to make an informed conclusion.").

[81] *Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987); *see also Dobler v. Montgomery Cellular Hldg. Co., Inc.*, 2001 WL 1334182, at *3 (Del. Ch. Oct. 19, 2001) ("While the law in Delaware may be unclear as to whether this purpose [to evaluate the non-payment of dividends], standing alone, is proper, it is well-settled that this purpose is proper when combined with a request to value shares of the corporation.").

[82] *Helmsman*, 525 A.2d at 165 (citing *Application of Delaware Racing Ass'n*, 206 A.2d 664 (Del. Ch. 1965), *aff'd*, 213 A.2d 203 (Del. 1965)).

15

a subsidiary does not render its purpose improper. Section 220 expressly permits inspection of subsidiary-level books and records.[83]

Brighthouse argues that Greenlight's stated purpose is a pretext for its true motivation: "activism."[84] "[I]n order to succeed, [Brighthouse] must prove that the plaintiff pursued its claim under false pretenses, and its primary purpose is indeed improper."[85] This defense is "fact intensive and difficult to establish."[86]

In support of its defense, Brighthouse points to a September 2023 email thread between Einhorn and senior officers at Greenlight. In the communication, Einhorn told his colleagues that it was "time to consider activism" toward

---

[83] 8 *Del. C.* § 220(b)(2)(a) ("Any stockholder . . . shall, upon written demand . . . have the right . . . to inspect for any proper purpose, and to make copies and extracts from: A subsidiary's books and records, to the extent that: (a) The corporation has actual possession and control of such records of such subsidiary. . . ."); *see also Brown v. Empire Resorts, Inc.*, 2020 WL 1049428, at *1 (Del. Ch. Mar. 2, 2023) (ORDER) (implementing a bench ruling granting inspection of subsidiary-level documents for the purpose of valuing public company shares). Brighthouse does not aver that it lacks possession, custody, or control of BRCD's documents.

[84] Def.'s Post-trial Answering Br. (Dkt. 67) 5.

[85] *Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 817 (Del. Ch. 2007).

[86] *Id.*; *see also Woods Tr. of Avery L. Woods Tr. v. Sahara Enters., Inc.*, 238 A.3d 879, 891 (Del. Ch. 2020) ("[O]nce a stockholder has identified a proper purpose, such as valuing shares, the burden shifts to the corporation to prove that the stockholder's avowed purpose is not her actual purpose and that her actual purpose for conducting the inspection is improper.").

16

Brighthouse.[87]   He suggested pursuing a FOIA request or "a books and records

inspection demand" as a next step.[88]

Activism is not, however, a purpose unto itself.  It could imply a number of

intentions.[89]   Before Greenlight explores possible next steps, it wishes to value its

Brighthouse shares.[90]   That threshold valuation purpose is proper, irrespective of the

---

[87] JX 83 ("The goal is to either participate in a purchase of the company (with a fantasy of managing some of the assets in addition to making a great return), trigger a sale to someone else or change the board to accelerate capital release.").

[88] *Id.*  Brighthouse also cites to various statements by Einhorn during his deposition and at trial suggesting that Greenlight seeks to value Brighthouse as a whole, rather than its shares.  Def.'s Post-trial Answering Br. 48-51; *see* Einhorn Dep. 150, 223-24; Einhorn Tr. 131-32; Demand at 3 ("[T]he purpose of the demanded inspection is to determine the value of Stockholder's Shares and the value of the Corporation in general.").  But Einhorn's loose language does not overwhelm the weight of the evidence, which indicates that Greenlight primarily wishes to value its shares.  *E.g.*, Demand at 2 ("The purpose of this demand is to permit the Stockholder, an investment fund, to more accurately determine the value of the Shares."); *infra* notes 89-90.

[89] *Cf. In re Aerojet Rocketdyne Hldgs., Inc.*, 2022 WL 2180240, at *15 (Del. Ch. June 16, 2022) (discussing "classic notions" of activism as opposed to the parties' interpretation). In Einhorn's view, pursuing the books and records is activism.  *See* Einhorn Tr. 109 ("What I said is the purpose—the activism purpose is to obtain the records so that we can value the shares.  The activism is obtaining the records.  And then those records can then be used in valuation.  So the purpose of obtaining the records is to be able to do a valuation."); Einhorn Dep. 225 ("Those three goals [from the email exchange] do not appear in the demand letter. What the demand letter includes is asking for the information so that we can figure out what the shares are worth so that we can then evaluate what other goals we might want to pursue.").

[90] Demand at 6; Einhorn Tr. 70-71 ("We would like to value the shares of Brighthouse. We may do those other things somewhere down the line, but that's not what we're here for today. Today we're here to value the shares and to get the information so that we can understand what our investment is worth."); *compare Disney*, 2023 WL 4208482, at *8 (concluding that a stated purpose in a demand was not the stockholder's actual purpose where he claimed to be motivated by different intentions unrelated to his interests as a stockholder).

fact that Greenlight first pursued a FOIA request.[91]  "[A]ny secondary purpose or ulterior motive that [Greenlight] might have is irrelevant."[92]

## B. Whether the Requested Documents are Necessary and Essential to Greenlight's Purpose

A stockholder with a proper purpose "is not entitled to inspect all the documents that he or she believes are relevant or even likely to lead to information relevant to that purpose."[93]  Rather, "[t]he scope of inspection should be circumscribed with precision and limited to those documents that are necessary, essential and sufficient to the stockholder's purpose."[94]  If a stockholder's purpose

[91] *Cf. Caspian Select Credit Master Fund Ltd. v. Key Plastics Corp.*, 2014 WL 686308, at *4 (Del. Ch. Feb. 24, 2014) (concluding that a company failed to show a stockholder's valuation purpose was not one of its primary purposes and explaining that an attempt to gather information before making a Section 220 demand does not prejudice right to bring a Section 220 action); *King v. VeriFone Hldgs., Inc.*, 12 A.3d 1140, 1150 (Del. 2011).

[92] *Helmsman*, 525 A.2d at 164; *see also Pershing Square*, 923 A.2d at 817 ("A corporate defendant may resist demand where it shows that the stockholder's stated proper purpose is not the actual purpose for the demand. This showing is not made where a secondary improper purpose exists.") (citation omitted); *Grimes v. DSC Commc'ns Corp.*, 724 A.2d 561, 565 (Del. Ch. 1998) (holding that despite a plaintiff having secondary improper purposes, the plaintiff had a right to inspect books and records pursuant to a primary purpose); *Sahara Enters.*, 238 A.3d at 891 ("Delaware law does not require that a stockholder establish both a [valuation] purpose for seeking an inspection and an end to which the fruits of the inspection will be put."); *AmerisourceBergen Corp. v. Lebanon Cnty. Emps.' Ret. Fund*, 243 A.3d 417, 430 (Del. 2020) ("[A stockholder] is not required to specify the ends to which it might use the books and records.").

[93] *Okla. Firefighters Pension & Ret. Sys. v. Amazon.com, Inc.*, 2022 WL 1760618, at *13 n.113 (Del. Ch. June 1, 2022) (citing *Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL 353746, at *6 (Del. Ch. Feb. 12, 2009), *aff'd*, 977 A.2d 899 (Del. 2009)).

[94] *Marathon P'rs, L.P. v. M&F Worldwide Corp.*, 2004 WL 1728604, at *4 (Del. Ch. July 30, 2004).

is to value shares of a public company's stock, the stockholder must demonstrate that the information in the company's public records is insufficient.[95] If adequate public information exists to satisfy the stockholder's stated purpose, the Section 220 demand will be denied.[96]

Greenlight has only proven that a narrow subset of the materials it requests are necessary and essential to its valuation purpose. Brighthouse issues extensive, regular disclosures through SEC filings and earnings calls.[97] BLIC likewise makes routine SEC filings, as well as statutory filings that are publicly available.[98]

Yet Greenlight insists that there is a gap in the public record regarding BRCD. It believes that there may be substantial reserves at BRCD that could materially affect Brighthouse's financial condition.[99] It asserts that the ten categories of

---

[95] *See Polygon*, 2006 WL 2947486, at *3 ("The court will limit or deny any inspection to the extent that the requested information is available in the corporation's public filings.") (citation omitted); *DPF, Inc. v. Interstate Brands Corp.*, 1975 WL 1963, at *2 (Del. Ch. Oct. 2, 1975) ("[T]he stock is not only traded on the New York Stock Exchange but it is also registered with the Securities and Exchange Commission . . . . [T]he plaintiff could well already have access to all the information that it is reasonably and fairly entitled to receive for the purpose stated [valuation of stock].."); *see also Leviton Mfg.*, 681 A.2d at 1035 ("The burden of proof is always on the party seeking inspection to establish that each category of the books and records requested is essential and sufficient to [that party's] stated purpose.").

[96] *E.g.*, *Interstate Brands*, 1975 WL 1963, at *2.

[97] *See, e.g.*, *supra* notes 13-15 and accompanying text.

[98] *See supra* notes 16-19 and accompanying text.

[99] *See* Einhorn Tr. 59 ("[Greenlight has] a reasonable grasp on what the value of Brighthouse is excluding BRCD, which we think is substantially more than the current trading price of Brighthouse stock. But we also think that there's substantial additional

information it seeks are crucial to understanding BRCD's future dividend capacity and any effect on the value of its Brighthouse shares.[100] As Einhorn put it at trial, Greenlight wants to know "how many cookies are in [the BRCD cookie] jar."[101]

The demanded books and records include BRCD's cash flow projections, financial statements, auditor and actuarial opinions, and agreements with BLIC.[102] The date range for these materials spans several years, beginning in 2019. Stale projections and financial information, however, are hardly necessary to value Greenlight's Brighthouse shares today. And materials reflecting future potential dividend capacity would merely inform a guess about whether BRCD may—at some point—issue another dividend.[103]

---

value at BRCD, which we have no way to quantify because there's no good disclosure that enables us to do that.").

[100] *See generally* Einhorn Tr. 35-56; *see also* Stern Report at 11-21.

[101] Einhorn Tr. 31; *see also* JX 85 at 1 (noting about BRCD that "[t]here is no disclosure. People think it's a black hole. It makes BHF 'in investable' for many . . . . So, instead of being a black hole [] it's really a cookie jar. I want to know how many cookies are in the jar. As best I can tell the slightly conservative value of BHF today is about $80 +/- the black hole/cookie jar."); JX 86 at 2 ("[W]e have also seen 2 releases of an aggregate $1.2 billion from the reinsurance company [BRCD] approved by the regulator—that makes it to us more of a fantastic opaque cookie jar. It's time to see what's in the cookie jar. The catch is—somehow those statutory filings don't seem to be readily available/public.").

[102] Demand at App. A (categories 1 through 6, category 8, and category 10); *see supra* note 55 and accompanying text.

[103] The Court of Chancery has granted inspections of cash flow projections "because they are essential to valuation." *Quantum Tech. P'rs IV, L.P. v. Ploom, Inc.*, 2014 WL 2156622, at *12 (Del. Ch. May 14, 2014). In such cases, though, the relevant cash flow analyses generally would affect share value at the time of the request. *See e.g.*, *id.*; *In re BioClinica, Inc. S'holder Litig.*, 2013 WL 673736, at *5 (Del. Ch. Feb. 25, 2013) (granting inspection of management's financial projections because "projections of the future value of the

The market knows that BRCD might have capacity to issue future dividends, which is already factored into Brighthouse's stock price. The bulk of the requested non-public information might allow Greenlight to make a better prediction about whether BRCD *could* pursue another dividend.[104] But this is too attenuated from Greenlight's purpose of more accurately determining the current value of its Brighthouse shares to be essential.[105]

The Court of Chancery's decision in *Madison Avenue Investment Partners, LLC v. America First Real Estate Investment Partners, L.P.* is instructive.[106] There, limited partners sought books and records from Delaware limited partnerships for purposes of valuing their investment. Specifically, the plaintiffs sought to determine if subsidiaries of the entities had any obligation upon liquidation to a third party,

---

company are valuable to a stockholder deciding whether to exchange his ownership for the consideration tendered"); *see also Dobler*, 2001 WL 1334182, at *8 n.31 (holding that a plaintiff seeking books and records for a valuation purpose is entitled to inspect cash flow projections because they are "essential to valuation") (citation omitted); *Riker v. Teucrium Trading, LLC*, 2020 WL 2393340, at *8 (Del. Ch. May 12, 2020) (granting inspection of "projections . . . [that] would be important to valuing [the plaintiff]'s interests because what an investor cannot hope to do is to replicate management's inside view of the company's prospects"). Here, by contrast, the requested cash flow analyses are either backward-looking (regarding the 2020 and 2021 dividends) or Greenlight failed to prove that they have any effect on the current valuation of its Brighthouse shares.

[104] *See Riker*, 2020 WL 2393340, at *4 ("A stockholder . . . must 'make specific and discrete identification, with rifled precision, of the documents sought.") (citing *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000)).

[105] *See Madison Ave.*, 806 A.2d at 178.

[106] 806 A.2d 165.

which could reduce the value of the plaintiffs' units. Vice Chancellor Lamb denied the requests insofar as the plaintiffs sought documents that "presuppose[d] that an event of liquidation w[ould] occur."[107] He explained that although it was "possible for [the plaintiffs] to forecast the likelihood that such a liquidation or liquidations w[ould] occur, and, using that probability, assign a value to the impact such an event would have on the units [they] h[eld], such information f[ell] short of what [wa]s reasonably necessary for [the plaintiffs] to currently value [their] units."[108]

The circumstances here are similarly uncertain. Greenlight seeks books and records to assess whether BRCD has dividend capacity, which would help it better "assess the probability of future dividends at any time."[109] That is an exercise in guesswork. At present, a dividend is far from certain; none has been paid in two years. Irrespective of BRCD's reserves, the payment of a dividend would require that Brighthouse or its subsidiaries decide to request Department approval and that the Department's approval be granted. Given these intervening steps, documents allowing Greenlight to forecast the likelihood of a dividend are not vital for Greenlight to "currently value" its Brighthouse shares.[110]

---

[107] *Id.* at 178.

[108] *Id.*

[109] Pl.'s Post-trial Opening Br. (Dkt. 64) 62 n.169.

[110] *Madison Ave.*, 806 A.2d at 178; *see also Helmsman*, 525 A.2d at 165 (explaining that a purpose of assessing dividend potential is proper not in isolation but where it is linked to a valuation purpose). The cases cited by Greenlight are inapposite. Pl.'s Pre-trial Opening

By contrast, books and records evidencing any recent decision to pursue a dividend payment or associated requests to the Department are sufficiently tied to the current value of Greenlight's Brighthouse stock. If Brighthouse or its subsidiaries were actively taking steps toward obtaining approval for a dividend, payment seems more likely. Knowledge that this process was underway would improve Greenlight's ability to accurately value its interest in Brighthouse.[111]

Br. (Dkt. 55) 46-47 n.151 (listing cases). All but one involved private companies whose financial documents were inaccessible to stockholders absent a demand or litigation, and where the demanded financial records had a direct relation to *present* share value. *See Leviton Mfg.*, 685 A.2d at 1034 (limiting an inspection by a "locked-in" minority stockholder to only those documents "essential and sufficient" to its valuation purpose); *Madison Ave.*, 806 A.2d at 178-79 (holding that the production of "all non-public financial statements specifically relating to the real estate held or owned by" the partnerships was "*not* necessary to value [the plaintiffs'] investment . . . [but] that non-public financial statements specifically relating to the subsidiary partnerships through which" the partnership invests were "reasonably necessary to value [the plaintiffs'] investment in that partnership" (emphasis in original)); *Southpaw Credit Opportunity Master Fund L.P. v. Advanced Battery Techs., Inc.*, 2015 WL 915486, at *1 (Del. Ch. Feb. 26, 2015) (granting inspection of quarterly financial data over the span of several years of a de-listed publicly traded company that "ha[d] not complied with [its] disclosure obligations"); *Sanders v. Ohmite Hldg., LLC*, 17 A.3d 1186, 1190, 1195 (Del. Ch. 2011) (granting inspection of "[a]ll quarterly and annual financial reports" of an LLC where "information available from other sources" was insufficient to satisfy the plaintiff's stated purpose); *Sahara Enters.*, 238 A.3d at 886 (granting an inspection of "financial information" and board materials from a privately held company where the plaintiff's purposes were to value shares and investigate wrongdoing or mismanagement); *Macklowe v. Planet Hollywood, Inc.*, 1994 WL 560804, at *1 (Del. Ch. Sept. 29, 1995) (granting inspection of a privately held company's annual financial statements and accompanying information for a valuation purpose).

[111] Whether Brighthouse or its subsidiaries have recently taken steps toward the payment of a dividend is not in the record. If they have not done so, Brighthouse need not produce any books and records to Greenlight.

23

Category 7 of Greenlight's demand seeks "[d]ocuments to, or received from, the [Department] in connection with, or relating to, any request for approval of any dividend payment by BRCD."[112] Category 9 seeks Brighthouse, BRCD, and BLIC board minutes concerning "the payment of dividends by BRCD."[113] Greenlight is entitled to responsive documents (if any) sufficient to show that (1) the board of Brighthouse or its subsidiaries has determined to request Department approval to pay a dividend in the near term or (2) Brighthouse or its subsidiaries are engaged with the Department regarding a request for approval to pay a dividend in the near term.[114] Greenlight is also entitled to know the amount of any such request. Only board minutes and formal communications with the Department need be produced. Greenlight's demands are otherwise overbroad.[115]

---

[112] Demand at App. A.

[113] *Id.*

[114] By "near term," I mean that the dividend will be paid fairly soon. To my mind, that would be within the next six months. If the dividend would be paid in years, for example, I do not believe that it is sufficiently related to current value to warrant production. But given Brighthouse's superior knowledge about the time it takes to issue a dividend after a request for approval, I ask that the parties meet and confer about it in the first instance. Information about stale or rejected requests need not be provided. Further, board-level assessments of BRCD's reserves are outside the scope of what Greenlight is entitled to. *See* Pl.'s Post-trial Opening Br. 51; Demand at App. A. As with the financial information discussed above, this would merely allow Greenlight to speculate about the possibility of a dividend. *See supra* notes 102-10 and accompanying text.

[115] Brighthouse may redact any information in the minutes that is non-responsive to this issue. *See Amazon.com*, 2022 WL 1760618, at *13 ("[R]edactions to material unrelated to the subject matter of a demand are proper because Section 220 only entitles a stockholder

24

## C. Whether Brighthouse's Proposed Condition Is Proper

Brighthouse argues that, if Greenlight is granted inspection, the court must safeguard Brighthouse's confidential information from potential misuse.[116] Brighthouse asks that I bind Greenlight to a confidentiality order prohibiting trading on non-public information.[117]

"Delaware courts have repeatedly 'placed reasonable restrictions on shareholders' inspection rights in the context of suit brought under 8 *Del. C.* § 220.'"[118] One commonly imposed restriction is a reasonable confidentiality order to protect non-public information.[119] The restrictions cannot, however, impart "inequitable notion[s] into Delaware's Section 220 jurisprudence."[120]

Although Brighthouse has shown that the information it must produce (if any exists) warrants confidential—even highly confidential—treatment, imposing a trading restriction on Greenlight goes too far. Greenlight's trading is already

---

to information essential to accomplishing its stated purposes for inspection. The redactions appropriately cabin Section 220 inspections to their intended scope.") (citation omitted).

[116] *See* Def.'s Post-trial Answering Br. 54-55.

[117] *Id.* at 55.

[118] *Disney v. The Walt Disney Co.*, 2005 WL 1538336, at *1 (Del. Ch. June 20, 2005) (citation omitted); *see also Carroll*, 453 A.2d at 793; 8 *Del. C.* § 220(c).

[119] *See Tiger v. Boast Apparel, Inc.*, 214 A.3d 933, 935 (Del. 2019) (holding that though there is no "presumption of confidentiality," "the Court of Chancery may—and typically does—condition Section 220 inspections on the entry of a reasonable confidentiality order" where appropriate).

[120] *Ravenswood Inv. Co., L.P. v. Winmill & Co. Inc.*, 2014 WL 2445776, at *4 (Del. Ch. May 30, 2014).

regulated by applicable federal law. "Delaware law should strive to maintain its historically symbiotic relationship with the federal securities laws."[121] But doing so does not require this court to engage in duplicative efforts.[122]

A standard confidentiality order, akin to that negotiated between the parties before litigation ensued, is sufficient to protect Brighthouse's interests. The fact that BRCD is regulated under Title 18 does not require more stringent protections.[123] Title 18 provides that the Delaware Insurance Commissioner must treat Brighthouse's records as confidential.[124] A confidentiality order will require the same of Greenlight.

## D. Whether Fee Shifting Is Appropriate

Greenlight argues that the court should shift fees because Brighthouse refused to produce non-public documents. It relies on *Pettry v. Gilead Sciences, Inc.*, where the court granted the plaintiffs leave to move for fees incurred in pursuing a

---

[121] *Rivest v. Hauppauge Digital, Inc.*, 2022 WL 3973101, at *26 (Del. Ch. Sept. 1, 2022), *aff'd*, 300 A.3d 1270 (Del. 2023).

[122] *Id.* (citing authority cautioning that "Section 220 should not be converted into a method of enforcing the requirements of the federal securities laws").

[123] Brighthouse provides no authority for the notion that companies subject to insurance regulatory oversight are exempt from Section 220. The statutory schemes of Title 18 and Title 8 are not mutually exclusive.

[124] *See* 18 *Del. C.* § 6920 (providing that certain documents "may not be made public by the Commissioner"); *id.* § 321(g) (stating that working papers "may not be made public by the Commissioner"); *see also id.* § 5007 ("Documents, materials or other information in the possession or control of the Department . . . pursuant to § 5003(b)(12) and (13) . . . § 5004, § 5005, or § 5015 of this title . . . shall be confidential by law").

Section 220 action after the defendant unreasonably impaired its inspection rights.[125] There, the defendant "block[ed] legitimate discovery, misrepresent[ed] the record, and t[ook] positions for no apparent purpose other than obstructing the exercise of the plaintiffs' statutory rights."[126]

This case is nothing like *Gilead*. First, Greenlight failed to prove its entitlement to most of the documents it demanded. Second, Greenlight declined Brighthouse's invitation to meet and confer before the complaint was filed.[127] And third, Greenlight engaged in costly discovery and litigation practices.[128]

This dispute was undoubtably heated, but neither party acted in bad faith. Each will bear its own costs.

## III.  CONCLUSION

Greenlight has established a proper purpose and is entitled to inspect a limited subset of documents responsive to Categories 7 and 9 of its demand, as outlined above. Those documents (if any) will be produced under a reasonable confidentiality order without a trading restriction. Greenlight has not met its burden

---

[125] 2020 WL 6870461, at *30 (Del. Ch. Nov. 24, 2020).

[126] *Id.* at *30.

[127] *See* JX 136.

[128] *See* Def.'s Post-trial Answering Br. 58-59 (listing examples of purported aggressive litigation practices by Greenlight).

27

of proving that the remaining books and records sought in its demand are necessary and essential to its valuation purpose.

The parties are directed to confer on proposed implementing and confidentiality orders, which must be filed within 14 days.